[Crim. No. 9136.   In Bank.   May 25, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE TIMOTHY O'NEIL, Defendant and Petitioner.

Frank C. Morales, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Daniel J. Kremer, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Petitioner seeks relief under rule 31(a) of the California Rules of Court from his default in failing to file his notice of appeal within 10 days from the date of judgment as required by rule 31(a).

In his petition for a hearing in this court petitioner asserted that, during the vital 10-day period, he had told his attorney, the public defender, that he desired to appeal, and asked the attorney to appeal or to tell him how to do so; that the attorney did neither. It was also averred that after the date of judgment and while he was still in the county jail (presumably within the 10-day period), he wrote out a notice of appeal, placed it in the mail slot, saw the jail attendant pick it up, and he believed it had been picked up for mailing. These facts, if true, and if seasonably urged, would have entitled petitioner to the relief requested. (*People* v. *Diehl,* 62 Cal.2d 114 [41 Cal.Rptr. 281, 396 P.2d 697] ; *People* v. *Madrid,* 62 Cal.2d 602 [43 Cal.Rptr. 638, 400 P.2d 750] ; *People* v. *Collier,* 62 Cal.2d 543 [43 Cal.Rptr. 1, 399 P.2d 569] ; *In re Gonsalves,* 48 Cal.2d 638 [311 P.2d 483].) To ascertain the truth of these alleged facts we appointed the Honorable Warren Steel, Retired Judge of the Superior Court of Yuba County, as referee and submitted to him the following six questions:

1. Within 10 days after rendition of judgment, what, if anything, did petitioner state to his attorney in regard to an appeal?

2. Within this 10-day period, what, if anything, did the attorney say or do in regard to an appeal?

3. Within the 10-day period, did petitioner write out a notice of appeal and, if so, what efforts were made to forward the notice to the clerk of the court?

4. After his arrival at the Vacaville Medical Facility, was petitioner told by either the officers or personnel of the facility that it was then too late to perfect an appeal?

5. What are the general grounds upon which the proposed appeal is to be predicated?

6. Are there any grounds for holding that petitioner is estopped or has waived his right to move for a delayed appeal at this time?

After a full hearing, at which petitioner, represented by counsel, was present and testified, the referee found in reference to question number 1 that ''nothing was said by petitioner to his attorney in regard to an appeal.'' In reference to question number 2 the referee found that during the 10-day period the attorney said nothing about an appeal; that during this period the petitioner did express to the attorney dissatisfaction with the result obtained, and stated that a private attorney rather than the overworked public defender might have done a better job. In reference to question number 3 the referee found that petitioner claims to have written and mailed a letter of inquiry to the Clerk of the Supreme Court of California, at Sacramento, asking for advice about an appeal. In answer to question number 4 the referee found that after petitioner had arrived at Vacaville he was told by some attaché of the library or by an inmate that it was too late to appeal. As to question number 5 the referee found that the only possible ground urged that is legally permissible on such an appeal is the charge that he was inadequately represented by counsel when he changed his plea from not guilty to guilty. In regard to question number 6 the referee found there were no grounds for estoppel or waiver, and that petitioner had diligently pursued his rights.

The first five findings are amply supported, correctly interpret the record, and should be and are adopted as the findings of this court.

The record shows that in 1963 petitioner was charged with two counts of assault with a deadly weapon. (Pen. Code, § 245.) He was duly and properly informed of his legal rights, including his right to counsel. Upon being informed that petitioner was indigent, the trial court appointed the public defender as petitioner's counsel. Throughout the balance of the proceedings he was represented by such counsel. He was duly arraigned, and on March 15, 1963, pleaded not guilty to both counts, with April 1, 1963, set as the date for trial. On that date, with counsel present, petitioner requested permission to withdraw his pleas of not guilty, and, upon such permission being granted, personally pleaded guilty to both counts of the charge. After a probation report was filed and considered by the court, on April 19, 1963, petitioner was found guilty of the two offenses to which he had pleaded guilty, and was sentenced to prison for the terms prescribed by law, the terms to run concurrently.

The record also shows that in September of 1964 petitioner filed a petition for a writ of error *coram nobis* with the trial

court, contending that he was interrogated without counsel before he confessed in violation of *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S. Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], and *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed. 2d 977]. This petition was denied by both the superior and appellate courts. Thereafter, petitioner applied for a writ of habeas corpus, and when this was denied, in May of 1965 filed this petition under rule 31(a) for relief from his default.

In his testimony, in response to the first three questions, the petitioner asserted that prior to the date of sentence he told his attorney that he was going to appeal if he got a prison sentence instead of a jail sentence, and that the attorney told him that this was his prerogative. Then he claimed, immediately after he was sentenced, that his attorney visited him in the county jail, and petitioner again told the attorney he was going to appeal and asked the attorney how to go about it. The attorney simply told him that he had plenty of time. Petitioner also testified that within the 10-day period after rendition of judgment he wrote to the Clerk of the Supreme Court at Sacramento asking advice as to how to appeal, and that he saw the jail attendant pick this letter up from the mail slot, apparently for mailing. There is no evidence that such a letter was ever received by the clerk or by anyone else, and no other evidence that such a letter was ever written. There is some evidence from attachés of the county jail indicating that they have no recollection of such a letter.

The attorney testified that at no time did he ever talk with petitioner about the possibility of appealing. He did state that before petitioner changed his pleas to guilty, he did tell the attorney that if he lost the case at trial he intended to appeal. The attorney testified that he did not advise the change of pleas but did tell the petitioner that if he pleaded guilty there was a faint possibility that the trial court might impose a jail rather than a prison sentence. He also testified that petitioner personally suggested the change of pleas on April 1st after he had entered the courtroom and saw that the two victims of his alleged assaults were present, and after he had been told by his attorney that two defense witnesses in Nevada who had been suggested by petitioner had been interviewed by the attorney and that both had refused to come to California to testify. Three other defense witnesses, however, were then under subpena. The attorney testified that he advised against the change of pleas, but petitioner insisted, and guilty pleas were entered. After sentence, the attorney stated, nothing at all was said about an appeal. The

attorney further testified that it was his practice in handling criminal cases that if he believed error had been committed that he would prepare and file a notice of appeal, and that if his client indicated a desire to appeal, even though he believed there was no merit in such an appeal, that he would prepare a notice of appeal for his client and have him sign and file it in propria persona. In cases of guilty pleas it was his practice not to discuss anything about an appeal, because he did not think there was anything from which a proper appeal could be taken. The petitioner never requested any information about the procedure to be followed in preparing an appeal. The attorney did remember that after sentence the petitioner did state that as public defender he had too many clients to represent, and that if he, the petitioner, had had private counsel, a different result might have been obtained. The attorney also remembered that over a year after petitioner had been sent to prison, he received a letter from the petitioner saying that he had seen some new cases that indicated he might have grounds for an appeal or for *coram nobis*. The attorney did not reply to this letter "primarily because I couldn't for the life of me conceive what ground[s] for appeal he would have, or how a writ could be obtained" in view of the pleas of guilty.

There is in the record a letter from petitioner to the district attorney dated April 20, 1963, the day after sentence, thanking the district attorney for his "understanding and kindness" to him. He stated in this letter that when he first arrived at the county jail "it was no doubt obvious to everyone except myself that [I] was giving everyone a bad time." He also stated that he was charged with an assault against "Jeanie" and that he now realized. that "the woman I loved was hurt by my hands. Naturally did not wish her [to] appear against me"; that he had no hate or bitterness against either of his victims; that he thinks that he was mistreated in his relationship with Jeanie but that he now realizes that he "made the terrible mistake of losing control of myself"; and that he is sorry if he has at times seemed unreasonable. He ended the letter with the statement that "The law did not mistreat me in this case. The mistakes were myself." There is not the slightest hint in this letter that at that time he was dissatisfied with his sentence and was contemplating or had contemplated the possibility of an appeal. Admittedly, at no time did he complain to the public defender about not prosecuting an appeal.

If correct, the first three findings of the referee require

a denial of the requested relief. Applying the rule that, if reasonably possible, the record should be construed to protect the right of appeal (*In re Notz*, 62 Cal.2d 423, 424 [42 Cal. Rptr. 321, 398 P.2d 593]) and keeping in mind that the findings of the referee, even if supported, are not binding on this court but are entitled to great weight (*In re Notz, supra,* at p. 425), we think such findings correctly depict the factual situation presented in this record. For that reason they should be and are adopted as the findings of this court. Under them there was neither a request to appeal, a promise on the part of the attorney to appeal, nor an ineffectual effort on the part of petitioner to appeal during the vital 10-day period. Thus there is no basis for relief. This makes it unnecessary to consider the other findings in detail. But it should also be pointed out that petitioner delayed for over two years before filing his request to be relieved from default, and delayed well over a year before he filed his *coram nobis* and habeas corpus petitions. Even had there been a request or a promise to appeal, or an ineffectual effort to do so, within the 10-day period (which there was not) such a delay in seeking relief would ordinarily be fatal. In *People* v. *Garcia,* 63 Cal.2d 265, 268-269 [46 Cal.Rptr. 324, 405 P.2d 148], it was held that normally a delay of more than a year is fatal. Of course here, in finding number 6, the referee found there was no waiver or estoppel, but that finding rests on very fragile evidence indeed. It is based on petitioner's testimony that after he was sent to San Quentin he was confined in the prison hospital with an illness for several months; that thereafter, and for some time, he was ignorant of the law; and that an attaché in the prison library told him that it was too late to appeal. This advice, if given, was contrary to prison regulations governing prison attendants. Petitioner stated that he studied the law very hard under difficult conditions, and first tried *coram nobis* and then tried habeas corpus, and then discovered rule 31(a) and some of the cases interpreting it. Under such circumstances the delay would seem to be inexcusable.

Another factor to be considered is that petitioner seeks to appeal from a judgment based on pleas of guilty. The grounds upon which such an appeal may be properly taken are, of course, very limited. Petitioner is seeking to have this court exercise the discretionary power conferred upon it by rule 31(a). ▮ Where the petitioner seeks to appeal from a judgment based on a plea of guilty, this court, in the exercise of its discretion, should ordinarily not grant relief unless the

petitioner makes some showing that he has some ground of appeal which, if meritorious, would require a reversal. Here the referee has properly found that among the grounds set forth by petitioner, the only possible such ground urged by him is that he was ineffectually represented at the time he entered the pleas of guilty. But we now have a record before us, not only of what happened at the time of sentence, but of petitioner's testimony and that of his challenged attorney, in this proceeding. There is nothing in that record to even imply that petitioner was not, at all relevant times, ably and competently represented. Certainly the proceedings were not reduced to a "farce" or a "sham," under the rule of *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]. The burden in such cases is, and ought to be, on the petitioner seeking relief to show that he has some meritorious grounds upon which to appeal. This petitioner has not done.

Petitioner's application under rule 31(a) for relief from default is denied.

Traynor, C. J., McComb, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.