[Crim. No. 13272. In Bank. Dec. 24, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS SANCHEZ, Defendant and Petitioner.

## COUNSEL

Carlos Sanchez, in pro. per., and Marvin W. Friedman, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, and Timothy A. Reardon, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PETERS, J.**—Petitioner seeks an order permitting him to file a late notice of appeal pursuant to rule 31(a) of the California Rules of Court. Rule 31(a) requires that notice of appeal in a criminal case be filed within 10 days after rendition of judgment, but empowers appellate courts to grant relief from default in proper cases. Petitioner has not presented a proper case for such relief.

On July 2, 1968, petitioner and his brother Abel Sanchez were convicted by a jury of assault with a deadly weapon (Pen. Code, § 245) and armed robbery (Pen. Code, § 211a). Sentencing proceedings were held on July 17, 1968, and July 23, 1968,[1] petitioner being sentenced to state prison. Petitioner attempted to file a notice of appeal on December 3, 1968, and commenced this proceeding on January 17, 1969.

This court appointed counsel for petitioner and appointed a referee, the Honorable Charles S. Franich, Judge of the Superior Court of Santa Cruz County, to conduct an evidentiary hearing. The evidence adduced at the hearing may be summarized as follows:

Petitioner testified that immediately after his sentencing[2] he expressed to his trial counsel, Robert E. Triebsch, his desire "to continue fighting my

---

[1] The trial judge held the latter hearing to order specifically how the sentences were to be served. In each case, execution of sentence on the assault charge was stayed pending appeal.

[2] It is not clear whether petitioner was referring to the first sentencing proceeding on July 17, 1968, or to the second one on July 23, 1968.

conviction," and that, although his codefendant and brother, Abel, and Abel's attorney, Robert S. Shuken, were both "standing by" in the courtroom, neither heard petitioner's discussion with Mr. Triebsch. Petitioner testified on direct examination that Mr. Triebsch stated in reply "some legal stuff" to the effect that the only thing left for petitioner to do was to serve his time. However, on cross-examination petitioner testified that Mr. Triebsch went on to state to petitioner "some legal jargon" which petitioner had construed to mean that his conviction was being appealed. Petitioner testified that he had no other conversation with his attorney regarding fighting his conviction, that the trial judge did not discuss an appeal with him, and that he did not recall discussing an appeal with his brother's attorney.

Petitioner admitted that on the night of July 16, 1968—the eve of his first sentencing—he signed a written statement to the effect that he was guilty of the offense charged but that his brother Abel was in no way involved.

Petitioner further testified that he had believed that his brother's attorney included him in his brother's motion for a new trial and appeal, and that he did not learn that his case was not being appealed until he was in Soledad, at which time he filed his late notice of appeal. He also testified that he never communicated this belief to Mr. Triebsch, not even when he stated to Mr. Triebsch his desire to continue fighting his case.

Mr. Triebsch testified that he never represented to petitioner that he would appeal the conviction or in any other way pursue the matter further. According to Mr. Triebsch, after the first sentencing proceedings on July 17, 1968, he told petitioner that he saw no reason for filing a notice of appeal in view of petitioner's signed statement of the previous night, and petitioner appeared to have heard and understood this statement by Mr. Triebsch. Mr. Triebsch said that his recollection was that petitioner made no statement whatsoever in reply, and, more specifically, that petitioner did not then or at any other time express a desire to appeal or take any other action concerning his conviction. Mr. Triebsch recalled no other discussions with petitioner concerning an appeal. Mr. Triebsch also testified that within a week to 10 days following the July 23 proceedings he expressed to petitioner's mother his belief that an appeal for petitioner would be fruitless in view of petitioner's written statement, and that his recollection was that she did not express a desire that petitioner's case be appealed.

Mr. Triebsch further testified that petitioner's brother's attorney, Mr. Shuken, when making his motion for a new trial said nothing to the effect that he would take an appeal for petitioner.

The transcripts of the July 17 and July 23 sentencing proceedings indicate the following:

Both petitioner and his brother were present at the July 17 proceedings, during which Mr. Shuken made a motion for a new trial on the basis of newly discovered evidence—the July 16 statement of petitioner. Mr. Shuken stated specifically that he was making the motion "on behalf of Abel Sanchez," and Mr. Triebsch, when asked by the court if he was joining in the motion, stated that "in view of the confession, I do not join in the motion for new trial on behalf of Carlos Sanchez." When Mr. Shuken's motion was denied, he stated that "the only recourse Abel will have will be appeal from the proceedings, . . ." Mr. Shuken always specified that he was making the motion for a new trial and appealing from the denial thereof on behalf of petitioner's brother, and never indicated that petitioner was being included in either the motion or the appeal.

Petitioner's statements to the court during the July 17 proceeding seem to indicate an understanding that the motion and appeal therefrom were being made for Abel alone. He stated to the court that the report of the probation officer was incorrect in stating that Abel was involved in the crime charged, and also that his own statement in the report that he was not involved was untrue.

On the basis of the above evidence, the referee found: petitioner made no statement to his trial attorney in regard to an appeal or other further legal proceedings; immediately upon rendition of judgment on July 17, 1968, Mr. Triebsch advised petitioner that he would not appeal in view of petitioner's confession of July 16, and other than this Mr. Triebsch said nothing to petitioner in respect to an appeal or further proceedings; within 10 days after rendition of judgment, petitioner was aware of his right to appeal but was not aware of the requirement that the notice of appeal be filed within 10 days after rendition of judgment; even though he knew he had the right to do so, petitioner had no intention of appealing and was not concerned with the time period for filing a notice of appeal, but apparently had second thoughts while in Vacaville.

 A criminal defendant seeking relief from his default in failing to file a timely notice of appeal is entitled to such relief, absent waiver or estoppel due to delay, if he made a timely request of his trial attorney to file a notice of appeal, thereby placing the attorney under a duty to file it, instruct the defendant how to file it, or secure other counsel for him (e.g., *People* v. *Camarillo,* 66 Cal.2d 455 [58 Cal.Rptr. 112, 426 P.2d 512]); or if the attorney made a timely promise to file a notice of appeal, thereby invoking reasonable reliance on the part of the defendant (e.g., *People* v. *Flanagan,* 62 Cal.2d 63 [41 Cal.Rptr. 85, 396 P.2d 389]). A defendant may also be entitled to relief if his default was caused by ignorance of the right to appeal or of the 10-day period within which a notice of appeal must be filed.

(*People* v. *Acosta,* 71 Cal.2d 683, 687-690 [78 Cal.Rptr. 864, 456 P.2d 136].) ▇ In the present case, petitioner is not entitled to relief on any of these grounds.

Although not binding on us, even when based on conflicting evidence, we adopt the referee's findings that petitioner did not request that his trial attorney file an appeal or otherwise pursue the case further and that his attorney made no promise to do so. Furthermore, although the referee did not explicitly so find, we find that petitioner did not reasonably believe that either his own attorney or his brother's attorney would file an appeal of his conviction. In *In re Thornton,* 64 Cal.2d 484 [50 Cal.Rptr. 556, 413 P.2d 156], we upheld the referee's findings that petitioner had not requested his trial attorney to file an appeal, that the attorney had not promised to file an appeal, and that petitioner did not reasonably believe that the attorney would file an appeal. We denied relief, noting that "part of petitioner's testimony [was] demonstrably false and other parts inconsistent or subject to doubt." (64 Cal.2d at p. 486.) We distinguished that case from "a simple case of the petitioner testifying that a request to appeal and a promise to appeal were made, and the trial attorney testifying that they were not, in which event liberal rules of construction favoring the allowance of an appeal might weigh the scales in favor of petitioner, . . ." (64 Cal.2d at pp. 485-486.)

The present case is like *Thornton* rather than the type of case distinguished in the *Thornton* opinion. Here, as in *Thornton,* there is more than a mere conflict in testimony concerning a request or promise to appeal.

The fact that, although both were "standing by," neither petitioner's brother nor his brother's attorney heard petitioner's alleged statement about fighting his conviction, the fact that petitioner made a written confession of his guilt after his conviction, and the fact that petitioner admitted his guilt to the court during the sentencing proceedings, make it extremely difficult to believe any statement was made to continue fighting the conviction.

Petitioner's testimony as to whether his trial attorney promised to appeal is somewhat conflicting. Moreover, petitioner never alleges specifically that his attorney so promised, but rather that petitioner so construed his attorney's "legal jargon." In any event, petitioner does not allege that he relied on any purported promise to appeal by his own attorney, but rather that he believed that his case was appealed by *his brother's* attorney.

Finally, the evidence in the instant case casts the gravest doubts on petitioner's allegations that petitioner believed his brother's attorney was

appealing petitioner's conviction. Petitioner admittedly never communicated this alleged belief to his own attorney, even at the time he allegedly expressed to his own attorney his desire to continue fighting his case; and his attorney and his brother's attorney both repeatedly stated at the sentencing proceeding, at which petitioner was present, that his brother's attorney's motion for a new trial and appeal from the denial thereof were being made on behalf of his brother only.

Thus, the referee's explicit findings that petitioner did not express to his trial attorney a desire to in any way fight his conviction and that his attorney made no promise to do so, as well as his implicit finding that petitioner did not reasonably believe that his conviction was being appealed by either his own attorney or his brother's attorney, are clearly supported by the weight of credible evidence, and the rule of resolving reasonable doubts in favor of the 31(a) petitioner in close cases (e.g., *People* v. *Garcia*, 63 Cal.2d 265, 268 [46 Cal.Rptr. 324, 405 P.2d 148]; *People* v. *Davis*, 62 Cal.2d 806, 808 [44 Cal.Rptr. 441, 402 P.2d 129]) is inapplicable. (E.g., *People* v. *Castillo*, 71 Cal.2d 692, 696-697 [78 Cal.Rptr. 869, 456 P.2d 141]; *In re Thornton, supra,* 64 Cal.2d 484.)

We also adopt the referee's finding that within 10 days after rendition of judgment petitioner was aware of his right to appeal. Petitioner did testify at one point during the referee's hearing that he was unaware of his right to appeal until sometime in August or September of 1968, while in Vacaville. However, the conflict between this testimony and petitioner's repeated allegations that he believed that he was being included in his brother's appeal, and the fact that petitioner was well aware of his brother's appeal clearly support the referee's finding that petitioner was aware of his right to appeal.

██ There is no evidence to dispute the referee's finding that petitioner was unaware of the requirement that the notice of appeal be filed within 10 days after rendition of judgment, and we accept this finding. ██ However, petitioner is not entitled to relief on this basis under the rule of *People* v. *Acosta, supra,* 71 Cal.2d 683, 687-690, since he has failed to demonstrate that his failure to file a timely notice of appeal was *caused by* his ignorance of the 10-day rule. (*People* v. *Castillo, supra,* 71 Cal.2d 692, 697-698.) ██ The referee explicitly found that petitioner had no intention of appealing and was not concerned with the time period for filing a notice of appeal, but apparently had second thoughts while in Vacaville. The evidence strongly supports the referee's finding that

ignorance was not the cause of petitioner's delay; petitioner's written confession and his admission of guilt to the sentencing judge strongly belie a desire to continue fighting his conviction. *Acosta* does not provide relief in such circumstances. ▮ As we stated in *Castillo,* the *Acosta* decision "does not permit a prisoner—whether or not he is ignorant of the 10-day period for filing a notice of appeal—to purposefully forego his right to appeal and then later, when the unpleasantness of prison life becomes more unbearable, change his mind." (71 Cal.2d at p. 698.)

The petition for relief under rule 31(a) is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.