[Crim. No. 14282. In Bank. Feb. 11, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
BONIFACIO HERNANDEZ RODRIGUEZ, Defendant and Petitioner.

## COUNSEL

Bonifacio Hernandez Rodriguez, in pro. per., and Joseph S. Samuel, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Sanford Svetcov, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

McCOMB, J.—Petitioner seeks an order permitting him to file a late notice of appeal pursuant to rule 31(a) of the California Rules of Court. Rule 31(a) requires that notice of appeal in a criminal case be filed within 10 days after rendition of judgment but empowers appellate courts to grant relief from default in proper cases. Petitioner has not presented a proper case for such relief.

On October 29, 1968, petitioner was convicted by a jury of assault by means of force likely to produce great bodily injury (Pen. Code, § 245). He was sentenced to state prison on November 14, 1968. The instant proceeding was commenced on December 1, 1969. Theretofore petitioner had attempted to file with the superior court a belated notice of appeal (March 3, 1969), a request for relief under rule 31(a) (April

7, 1969), and a belated notice of appeal (October 21, 1969) each of which was denied without explanation of the proper procedure.[1]

The petition, filed under declaration of perjury, alleges that petitioner is an indigent immigrant with only a second grade education, that he has only a meager knowledge of the English language, that he testified through an interpreter at the trial, that his trial counsel ignored his request for an appeal, that counsel promised to pursue the judgment imposed "but since the time of sentencing petitioner has not seen nor heard from his counsel and also petitioner's counsel did not inform or state how he proposed to pursue the case," that petitioner did not have the skill or knowledge with which to prosecute an appeal in propria persona, that he was not aware of the time requirements for a notice of appeal, that he sought to help himself in the only manner he knew by asking assistance of other inmates, that he recently learned from other inmates of the right to apply under rule 31(a), and that with their assistance he had prepared a belated notice of appeal which was "filed" in the superior court on October 18, 1969, and was "arbitrarily denied." If these allegations are true, absent grounds of waiver or estoppel, petitioner would be entitled to the relief he seeks. (*In re Thornton* (1966) 64 Cal.2d 484, 485 [50 Cal.Rptr. 556, 413 P.2d 156].)

This court appointed counsel for petitioner and appointed a referee, the Honorable Edward L. Brady, Judge of the Superior Court of San Benito County, to conduct an evidentiary hearing to determine what happened during the 10-day period following the judgment,—whether petitioner was then aware of his right to appeal or of the 10-day requirement, whether there were grounds for holding that petitioner is estopped or has waived his right to move for a delayed appeal, and what prior attempts, if any, petitioner has made to secure relief from his conviction. Witnesses were petitioner, the deputy public defender who represented him at the trial, and the trial prosecuting attorney. An interpreter was provided because of petitioner's claimed language difficulties. His ability to understand and to be understood in English became an important issue at the hearing. It was found easier to proceed without the inter-

---

[1]Rule 31(a) requires that whenever a notice of appeal is received by the clerk of the superior court after the expiration of the 10-day period prescribed for filing such notice, the clerk shall mark it "Received (date) but not filed" and advise the party seeking to file the notice that it was received but not filed because the period for filing notice of appeal had elapsed and that he may petition the reviewing court for relief by verified statement or declaration under penalty of perjury, setting forth the date of the judgment from which the party seeks to appeal, the steps which the party took to file his notice of appeal on time, and any other information which has, or which the party believes has, a bearing upon the circumstances which caused the notice of appeal to arrive late.

preter and to allow petitioner's counsel to stand close to petitioner and repeat the answers for the court reporter.

Petitioner testified that neither the judge nor his trial attorney had talked to him about an appeal and that he had not asked his attorney to appeal. This testimony was corroborated by his trial counsel who testified that it was the practice in his office when he thought a convicted client had a meritorious case on appeal to prepare and sign as his attorney a notice of appeal and file within 10 days; that if the defendant indicated he wanted to appeal and it was felt that the case was not meritorious, he would prepare a propria persona notice of appeal, obtain defendant's signature, file it on his behalf, and instruct him how to contact the court for the appointment of counsel on appeal; and that he had not advised petitioner to appeal because in his judgment the case was not meritorious.[2] The referee found that trial counsel was an experienced criminal attorney who had been a deputy district attorney in Alameda County for four years and had been involved in more than 5,000 criminal cases.

Petitioner testified that he did not ask anybody about an appeal during the 10-day period because at that time he did not know about his right to appeal. He first learned of this right from another inmate two or three days after he arrived at Vacaville. He asked his prison counselor for papers to file an appeal, and the counselor advised him not to appeal. Sometime after that and before February 11, 1969, he was transferred to the Sierra Conservation Center at Jamestown. On February 11 he requested his trial counsel to furnish him with a copy of the preliminary transcript, reporter's transcript, and all trial proceedings in his possession so that he (petitioner) could file a writ of habeas corpus. Counsel forwarded the transcript of the preliminary examination, a police report and a copy of petitioner's "rap sheet" but advised that "as you never asked me to file a Notice of Appeal for you, one is not on record and therefore no transcript of the trial has been prepared." On August 5, 1969, petitioner wrote to the county clerk to secure a transcript of his trial. He testified that other inmates wrote his various petitions for relief for him, that he did not read his present petition, that it was read to him in English by "a white guy," and that he took it "to a Chicano" who read it in English, but did not translate it for him in Spanish, told him it was all right and that he should send it to court.

---

[2]In cases such as the instant one where the petitioner is seeking 31(a) relief from a judgment entered after a trial, this court has never concerned itself with the apparent merits of the appeal. (See *People* v. *O'Neil*, 64 Cal.2d 666, 671-672 [51 Cal.Rptr. 250, 414 P.2d 378], concerning 31(a) relief from a judgment based upon a plea of guilty.)

Petitioner testified that he was born in Puerto Rico, attended school there through the sixth grade, spoke mostly Spanish, was 37 years old at the time of the hearing, and had been in this country some 17 years.

His trial attorney testified that he had always been able to communicate with petitioner in English and found no evidence of misunderstanding and, in fact, at the trial petitioner had translated for him, in English, the testimony of the victim who spoke through an interpreter. Petitioner had not testified at the trial and no evidence was introduced on his behalf. His counsel had many conversations with him before and during trial and testified at the hearing that petitioner "speaks English better than he speaks it today. He—if you're—you don't give him A-plus on grammar, he's perfectly understandable, and I think I made myself understood to him. For example, Mr. Rodriguez asked me during the course of the trial, or before the trial, whether his prior record could be used against him.[3] We discussed whether or not he wanted to testify and this prior record business came up then. He did not make up his mind until the conclusion of the prosecution's case that he did not want to testify. We talked about it on more than one occasion while in court. Before the time we got to court we talked about it. And I had no difficulty understanding him, and I assume that he had no difficulty understanding me."

The prosecuting attorney testified that neither he nor the trial judge had ever advised petitioner of his right to an appeal. He was asked if he had any knowledge of petitioner's ability to understand and communicate in English. He replied that he did, based upon the fact that he had handled the case at the preliminary examination, that petitioner was arraigned and had pled in English, that petitioner was able to communicate with his counsel in English, and that all throughout the proceedings he was talked to in English. He added, "But in addition to that, as I knew Mr. Rodriguez was at the time making some noise about his ability to speak English, I talked to the—preparing the case for trial on this assault with a deadly weapon, I spoke with numerous Watsonville Police Department officers anticipating this line of—of discussion of the trial that he was unable to understand and that this may come up during the course of the trial. So, I spoke with ten or twelve of the Watsonville Police officers who are very familiar with Mr. Rodriguez, all of whom have always spoken with him in English. . . . As a matter of fact, one of the officers that I spoke to . . . is of Spanish-speaking descent, Of-

---

[3]The prior record consisted of misdemeanor convictions, no appeals. No inferences necessarily arise therefrom that petitioner had knowledge of the right to appeal or of the procedural requirements for an appeal prior to his present felony conviction.

ficer Terrigano, and he spoke to him in English as well, so—to Mr. Rodriguez."

The referee found that within the 10-day period after rendition of judgment petitioner did not state anything in regard to an appeal to his trial counsel; that his counsel did not say or do anything in regard to an appeal; and that there were no contentions at the hearing that anything was said by either of them in regard to an appeal during the 10-day period. The referee found that petitioner became aware of his right to appeal from another prisoner two or three days after judgment while he was at Vacaville.

There was no evidence in the record that petitioner was aware of the 10-day requirement, however, and the referee concluded that because of petitioner's language problems, unfamiliarity with court procedures, and general lack of comprehension, that he was not aware of this requirement. The referee found that neither ignorance of the 10-day requirement for filing nor ignorance of the right to appeal was the reason petitioner did not timely file a notice of appeal, and that the reason was, as petitioner testified, that he was told not to appeal by his prison counselor.

It therefore clearly appears that petitioner not only repudiated his allegations that he had requested, and that his attorney had promised, to take an appeal but he made an affirmative showing that his awareness of the right to appeal came from a fellow inmate at Vacaville. He not only failed to demonstrate that his failure to file a timely notice of appeal was *caused by* his ignorance of the 10-day rule (see *People* v. *Sanchez* (1969) 1 Cal.3d 496, 502 [82 Cal.Rptr. 634, 462 P.2d 386]; *People* v. *Castillo* (1969) 71 Cal.2d 692, 697 [78 Cal.Rptr. 869, 456 P.2d 141]) but he made an affirmative showing that he had decided not to appeal. There was no showing as in *People* v. *Bailey* (1969) 1 Cal.3d 180, 186-187 [81 Cal.Rptr. 774, 460 P.2d 974], that this decision was based on an erroneous view of the law. There was no showing, as in *People* v. *Slobodion* (1947) 30 Cal.2d 362 [181 P.2d 868], that he was prevented by a prison official from filing an appeal. He was given advice and he decided to take it. ■ We adopt the referee's findings[4] that petitioner was aware of the right to appeal but not of the 10-day filing requirement and that ignorance of the 10-day requirement was not the reason he did not file a timely notice. We find that the reason was that he had decided not to appeal.

---

[4]It is well established that the findings of the referee are entitled to great weight but this court has the burden of determining whether to accept the referee's findings as its own. (*People* v. *Bailey* (1969) 1 Cal.3d 180, 185. fn. 4 [81 Cal.Rptr. 774, 460 P.2d 974]; *People* v. *Acosta* (1969) 71 Cal.2d 683, 687 [78 Cal.Rptr. 864, 456 P.2d 136].)

The referee found that grounds for finding "no estoppel or waiver of rights" would be the educational and language difficulties of petitioner "which necessitated a complete reliance upon advice and assistance of other prisoners who seemed unable to communicate with petitioner as evidenced by the letters and petitions filed herein" and "the activities of petitioner in attempting to secure relief from his conviction" considered in the light of his educational and language difficulties. He found that prior attempts of petitioner to secure relief from his conviction could be said to start in late November 1968 when petitioner asked a prison counselor at Vacaville for papers with which to prosecute an appeal.

■ It is the policy of this court to liberally exercise its power under rule 31(a) to grant relief in proper cases, so that appeals may be considered on their merits and so that forfeitures of substantial rights on technical grounds may be avoided (e.g., *People* v. *Bailey, supra,* 1 Cal. 3d 180, 185; *People* v. *Acosta, supra,* 71 Cal.2d 683, 685; *People* v. *Casillas,* 61 Cal.2d 344, 346 [38 Cal.Rptr. 721, 392 P.2d 521]). ■ Reasonable doubts as to the veracity of a petitioner's allegations in a rule 31(a) matter are resolved in favor of petitioner to protect the right of appeal (see *People* v. *Acosta, supra,* 71 Cal.2d at p. 689). This is particularly so where an illiterate prisoner relies on the advice and assistance of other persons in preparing documents to be forwarded to the courts. However here some of the statements by petitioner were demonstrably false (cf. *In re Thornton* (1966) *supra,* 64 Cal.2d 484, 485-486).

In *Acosta, supra,* 71 Cal.2d 683, 690, this court concurred with referee findings that under the peculiar facts of that case petitioner was not estopped from obtaining relief. There petitioner had been advised by his trial counsel both before and within the 10-day period of his appeal rights, but because of emotional and psychiatric problems during and immediately following his trial, extreme difficulty in communicating in English and other circumstances petitioner was held to be *unaware* of his right to appeal. Under the peculiar facts of the case at bench the language difficulties were not shown to have been so extreme as to interfere with petitioner's ability to communicate or to understand, or to have prevented his comprehension or awareness of the advice given to him at Vacaville. ■ Whatever the reasons advanced by his prison counsellor or whatever the reasons considered by petitioner which influenced his decision not to appeal, this decision was made after he asked his counselor for papers with which to prosecute an appeal. It appears to have been consciously and volitionally reached. Petitioner made no showing that he sought advice or assistance from his trial counsel or from any responsible public official within the 10 days or even during

the time that he remained at Vacaville. At most the evidence shows that petitioner had second thoughts after he left and went to Jamestown.

We find, therefore, that petitioner is estopped and that he has waived his right to move for a delayed appeal. The new decision to appeal came too late and so did the steps taken by him to carry out that decision. "*Acosta* does not provide relief in such circumstances. As we stated in *Castillo,* the *Acosta* decision 'does not permit a prisoner—whether or not he is ignorant of the 10-day period for filing a notice of appeal—to purposefully forego his right to appeal and then later, when the unpleasantness of prison life becomes more unbearable, change his mind.'" (*People* v. *Sanchez, supra,* 1 Cal.3d 496, 503.)

The petition for relief under rule 31(a) is denied.

Wright, C. J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**PETERS, J.**—I dissent.

The referee found that within 10 days after rendition of judgment "petitioner became aware of his right to appeal from another prisoner at Vacaville, but was not aware of the 10-day requirement for filing notice of appeal," that his ignorance was not "the reason petitioner did not file a timely appeal," that he "asked a prison counselor for papers with which to prosecute an appeal," that petitioner testified that he "was told by the counselor not to appeal," that this "was the reason given for not prosecuting an appeal at that time," and that shortly afterwards he was sent from Vacaville to Jamestown.

The referee also found that grounds for finding no estoppel or waiver of rights would be the "educational and language difficulties of petitioner which necessitated a complete reliance upon advice and assistance of other prisoners who seemed unable to communicate with petitioner as evidenced by the letters and petitions filed herein."

I believe that we should adopt the findings of the referee and that those findings warrant a belated appeal.

The majority also purport to accept the findings of the referee but they fail to give effect to the crucial finding. The majority recognize that petitioner asked a prison counselor for papers to appeal and that the referee found that the reason petitioner did not appeal was "that he was told not to appeal by his prison counselor." But then the majority add: "There was no showing, as in *People* v. *Slobodion* (1947) 30 Cal.2d 362 [181 P.2d 868], that he was prevented by a prison official from filing

an appeal. He was given advice and he decided to take it." (*Ante,* p. 78.)

Contrary to the majority opinion, I believe that the evidence and findings show that for all practical purposes petitioner was prevented by a prison official from filing an appeal within contemplation of the principle enunciated in *Slobodion.*

Rule 31(a) of the California Rules of Court, which requires that a notice of appeal in a criminal case be filed within 10 days of rendition of judgment, empowers appellate courts to grant relief in proper cases. The power is to be exercised liberally to protect the right to appeal so that appeals may be considered on their merits, and so that forfeitures of substantial rights on technical grounds may be avoided. (E.g., *People* v. *Bailey,* 1 Cal.3d 180, 185 [81 Cal.Rptr. 774, 460 P.2d 974]; *People* v. *Acosta,* 71 Cal.2d 683, 685 [78 Cal.Rptr. 864, 456 P.2d 136]; *People* v. *Casillas,* 61 Cal.2d 344, 345-346 [38 Cal.Rptr. 721, 392 P.2d 521].)

Absent waiver or estoppel, a criminal defendant is entitled to relief from his default in failing to file a timely notice of appeal if his default was caused by ignorance of the right to appeal or of the 10-day period within which a notice of appeal must be filed. (*People* v. *Sanchez,* 1 Cal.3d 496, 500-501 [82 Cal.Rptr. 634, 462 P.2d 386]; *People* v. *Acosta, supra,* 71 Cal.2d 683, 687-688.)

Petitioner was unaware of the 10-day limitation on the time to appeal, and under the above authorities we must hold that the possible 16-day delay between judgment and the time he went to the prison counselor is excused.[1]

Any further delay was based, not on his ignorance of the time to file an appeal, but on the advice of the prison counselor. However, his reliance on the advice of the prison counselor furnishes no basis to deny him a belated appeal.

Long prior to the adoption of the provision in rule 31(a) granting appellate courts power to relieve a defendant from failure to file a timely notice of appeal, and at a time when a timely notice of appeal was considered jurisdictional, this court considered the problem of interference with the exercise of the right of appeal by prison administrators. In *People* v. *Slobodion, supra,* 30 Cal.2d 362, 366, we recognized that a prisoner who desires to appeal in propria persona is "wholly dependent on the prison employees for effecting the actual filing of his notice of appeal

---

[1]Petitioner was sentenced on November 14, 1968. The referee states that it is not clear that he went to the prison counselor for papers to appeal within 10 days thereafter but that he probably went in late November 1968.

within the prescribed time." We held that where the prisoner had delivered the notice to a prison official within the 10-day period and the officials had failed to see that it was delivered to the clerk of the court, the petitioner is entitled to a belated appeal.

The principle of *Slobodion* is that, when prison authorities interfere with the exercise of the right of appeal, relief should be granted. No other rule is appropriate in the light of the handicaps faced by an incarcerated person seeking to appeal. And certainly the rule is compelled by the provision of rule 31(a) adopted subsequent to *Slobodion* which authorizes appellate courts to liberally grant belated appeals so that they may be considered on their merits and forfeitures of substantial rights on technical grounds may be avoided.

We are not here called upon to decide whether the prison counselor had a duty to supply appeal papers when requested by an inmate. The counselor did more than refuse to supply the papers. He told petitioner, an inmate with little education and limited use of the English language, not to appeal. Had the counselor merely refused to supply a notice of appeal, petitioner might have obtained a notice from other inmates. But the advice of the counselor foreclosed this.

It is not the counselor's business to persuade defendants not to appeal or give legal advice, and a prisoner about to commence his term in prison and attempting to adjust to prison life is in no position to exercise an independent judgment and reject the advice of his prison counselor, who will in all probability be making recommendations as to the placement of the defendant in our prison system.

In advising petitioner not to appeal, the counselor went beyond any right or privilege he had and interfered with and prevented petitioner's right to appeal. Such interference warrants relief under the *Slobodion* principle. For this court to suggest that petitioner merely received some casual advice and voluntarily decided to take it reveals a lack of sophistication and of understanding of the harsh realities of prison life. In an analogous situation, where a probation officer will make a recommendation to a trial judge prior to sentencing, we have recognized the realities of the situation and held that statements made by the defendant to the officer are not voluntary and are inadmissible in any retrial. (*People* v. *Harrington,* 2 Cal.3d 991, 999 [88 Cal.Rptr. 161, 471 P.2d 961]; *People* v. *Quinn,* 61 Cal.2d 551, 554 [39 Cal.Rptr. 393, 393 P.2d 705].) We should also recognize the realities of the situation confronted by petitioner and hold that a decision not to appeal made on the basis of

"advice" of a prison counselor, whose recommendation may gravely affect the prisoner's life, is also involuntary.[2]

I would grant the petition for relief under rule 31(a).

Tobriner, J., concurred.

---

[2]It will be recalled that petitioner sought to appeal while he was at Vacaville shortly after sentencing and before his assignment to Jamestown. The position of a correctional counselor is described as follows: "Under general supervision, to assemble, organize, analyze, and record information necessary for *classification* and parole planning for prison inmates; to interview and counsel inmates and assist with their adjustment and plans for rehabilitation in a correctional setting; and to do other work as required. . . . [¶] . . . Employees in this series are usually assigned either to a reception guidance center or to a State correctional facility. *Reception guidance centers prepare an evaluation of an inmate and make recommendations for his subsequent classification, assignment, and treatment in a correctional setting."* (Italics added; Cal. State Pers. Bd., Specifications, Correctional Counselor I, II, III, Schematic Codes XS20; XS30; XS40.)