[Crim. No. 13769. In Bank. June 25, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
NILES LUCKY CHAPMAN, Defendant and Petitioner.

**COUNSEL**

Niles Lucky Chapman, in pro. per., and Alan Brodovsky, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edward A. Hinz, Jr., and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—Petitioner seeks an order permitting him to file a late notice of appeal pursuant to rule 31(a) of the California Rules of Court. We have concluded that he is not entitled to the requested relief.

Petitioner was convicted after a jury trial in Sacramento Superior Court of attempted burglary. (Pen. Code, §§ 459, 664.) He was sentenced to state prison on January 2, 1969. On May 21, 1969, almost five months after sentencing, he petitioned the Court of Appeal for rule 31(a) relief.

Petitioner made the following allegations in his petition: Upon hearing the judgment of the trial court, he stated in open court that he wished to appeal, at which point the public defender representing him directed him to keep his voice down because court was still in session. He was "positive" that the judge and the district attorney heard his statement. He saw his attorney make a note on one of the papers he had before him, and believed that the attorney was making a note of his request. After waiting what he thought was a "reasonable" time (four months and five days) he wrote the clerk of the Court of Appeal asking when his case would be heard and was informed by letter (attached to his petition and dated May 12) that no appeal was pending. He immediately sent a notice of appeal to the superior court but was informed by letter dated May 15 and attached to his petition that it would not be filed. He then sent a motion dated May 19, 1969, to the Court of Appeal for relief from default under rule 31(a).

We appointed the Honorable John G. Hauck, Judge of the Superior Court of Sutter County, as referee for this court and directed him to conduct an evidentiary hearing to determine the facts.

The following evidence was adduced at the hearing: Petitioner testified that he was sentenced in a large courtroom with 50 or 60 people present. He stated that there "was a little noise" in the room. He thought people were talking and a few people were crying. As he was standing next to his attorney after sentencing, he asked, "in my normal tone of voice," whether he could appeal. His attorney told him to keep his voice down because court was still in session. The attorney made a note on a paper in front of him on the desk which petitioner could not see, but assumed was a notation about his appeal.

Petitioner testified that later, as he was being returned to the holding cell, he asked his attorney "whether he would take care of this," and the attorney said he would. He also testified that he had asked his attorney to come see him but could not remember whether the attorney said he would come.

Petitioner testified he had three visitors while he was held in the county jail after sentencing, his mother, Doris Blunk and Sheila Mortham. He told Doris Blunk and Sheila Mortham that he was going to "fight" his conviction. He did not recall whether he told his mother he was going to appeal.

Because he knew "the due process of law takes quite a lot of time" (he was in the county jail three and a half or four months before his trial), he testified that he did not become concerned about his appeal for four or five months. Then he wrote a letter to the clerk of the Court of Appeal, a copy of which was introduced into evidence, inquiring when his appeal was "coming up." He testified that he did not write his attorney because he forgot his name. He wrote the clerk because the addresses of all the courts were kept in the prison library. The reply, dated May 12, 1969, and informing petitioner that no appeal was pending, was also introduced into evidence.

Petitioner testified that he sought the advice of the inmate-clerk of the prison legal library because he "didn[t] know much about the law." Both the notice of appeal and the petition for 31(a) relief were prepared by the inmate-clerk. Petitioner testified as to the 31(a) petition that "I talked to the clerk and told him in my words what I felt, or how I felt about this case, and he wrote it up."

When questioned about the discrepancy between his petition, which stated that he had asked for an appeal "in open court," and his testimony, in which he stated that he stated his desire to appeal "in a normal voice" as he stood beside his attorney just after sentencing, he stated:

". . . (R)eading this now, and taking word for word and phrase for phrase, which I was negligent as far as doing this when he had typed it up, and I read it, and the main gist of it was—it sounded all right to me at the time. But reading it word for word, in taking it in that respect, there are a few things that—I wouldn't say that they were lies, but I would say they probably could have been worded a little differently."

Viola Chapman, petitioner's mother, testified that she was present at the sentencing and that the courtroom was "rather noisy." She could not hear what petitioner said. Later that day she visited him at the county jail for approximately 10 minutes. She testified that they talked about family affairs, that she would not have known what he was talking about if he mentioned an appeal but that she was sure he did not mention it to her.

Sheila Mortham, a friend of petitioner's, testified that she did not attend the sentencing but that she did visit petitioner in the county jail afterward for 10 or 15 minutes. She stated that he told her he was going to fight his conviction, that he was going to file "something," and that he was innocent. She could not remember if he used the word "appeal." She testified that he said "if he had to he would take it to the Supreme Court."

Doris Blunk, Sheila Mortham's mother, testified that she also visited him on the day of sentencing for 10 or 15 minutes. She further testified that he told her he was fighting his conviction or appealing it "or it was being appealed it [sic], something."

Albert H. Mundt, superior court judge in Sacramento County, testified that he presided over the judgment and sentence of the petitioner and that he had no independent recollection of what occurred that day. He stated that his usual practice when a defendant expresses a desire that his case be appealed is to direct his attorney to file a written notice of appeal. He testified that the transcript does not reveal a request by petitioner for an appeal. He volunteered that he does not have a noisy courtroom, and that the audience seating capacity of the courtroom is 82.

J. Warren Mayes, the court reporter at petitioner's judgment and sentencing, testified that he had no independent recollection of that proceeding. He testified that his usual practice is to take down everything he hears in the courtroom, that if he heard petitioner say anything it would appear in the record, and that the transcript does not reflect a request for an appeal.

Frederick W. Stephenson, the deputy district attorney assigned to petitioner's case, testified that petitioner was one of from 10 to 30 defendants on the 9 o'clock calendar and he had no independent recollection of the proceedings. He felt he would remember if petitioner had "made an issue"

of his desire to appeal, but further stated that "[i]f [petitioner] just simply stated to his attorney in that tone of voice which was conversational in tone only and I happened to overhear it I probably would not remember it."

He stated that on sentencing days, the courtroom is 20 to 50 percent filled but the noise of the crowd does not often interfere with his ability to hear statements made at the counsel table.

Peter Mering, the deputy public defender who represented petitioner at trial and sentencing, testified he was not certain he had an independent recollection of the judgment and sentencing proceedings. He stated that the usual practice in his office was to destroy files on which nothing further is pending, and that the file cards in his office indicated that petitioner's file was destroyed. He did not remember whether he had the file at the time he submitted his affidavit in support of the Attorney General's opposition to petitioner's petition for relief from default under rule 31(a),[1] but he suspected that the file had been destroyed before that time, because the file card indicated that it had. His statement in his affidavit that he had not made a notation about filing a notice of appeal was based on his recollection when he signed the affidavit. It was also based on his feeling that if he had made the notation the file would not have been destroyed, although he stated that he could have intended to retain the file and mislaid it. Moreover, he was not sure he would have written anything down even if petitioner had requested that he appeal, but might have just gone ahead and filed the notice. This was so because it would have been necessary for him to get petitioner's signature before he was moved out of the area.

Mr. Mering's normal practice was to inform a client when he thought there were grounds for appeal, and, even if he thought there were no grounds, to file a notice of appeal if the client requested it. He "felt rather strongly" that if the petitioner had requested him to do something about an appeal, he would have done it, or if he had not "it would have hung on my mind as one of the unfinished things that do sit on my desk for a while."

He had no independent recollection as to whether he had told petitioner to remain silent because court was in session or whether he made a note on his file. He stated that he sometimes noted the disposition of the case on the file and felt that it was possible that petitioner observed him doing that and did not know what he was writing down. When petitioner's appointed attorney asked Mr. Mering whether it was possible that he was

---

[1]In that affidavit, Mr. Mering stated categorically that petitioner did not state in open court that he wished to appeal, that Mering did not inform petitioner that he would prepare the required documents, and that he did not make any notes in his file to that effect.

busy making notes, was not paying attention to what petitioner was saying, and just told him to be quiet, he replied: "If Mr. Chapman was talking to me and not to the Court in an unaudible—or in a manner not to be heard all around, Mr. Chapman could have said something to me that I might not have hung on his every word, that's true. He may have—he may have wanted to say something to me or indicated something to me, or that he wanted to talk to me. I don't know. He could have. Could have said something to that effect."

Mr. Mering also stated that it was not uncommon for individuals to request that he visit them after sentencing, that sometimes he complies with the request and sometimes he does not depending on whether he thinks the discussions will be fruitful, and that it was possible that he said things that might lead petitioner to believe that he would visit him, but he did not recall such statements.

The referee found (1) that petitioner did not make any statement to his attorney in regard to filing an appeal within 10 days of the rendition of judgment; (2) that the attorney said and did nothing about an appeal during this time; (3) that petitioner did not have a good faith belief that the attorney would file a notice of appeal; and (4) that petitioner waived his right to move for a delayed appeal because he was aware of the 10-day requirement to file a notice of appeal at the time of sentencing and did nothing.

Petitioner does not. claim ignorance of the 10-day limitation on the right to appeal. If he is entitled to relief, it is on the ground that he made a timely request that his counsel pursue his appeal and relied on counsel to do so. ■ As we said in *People* v. *Acosta,* 71 Cal.2d 683, 687 [78 Cal.Rptr. 864, 456 P.2d 136], "A defendant is entitled to relief, absent grounds for waiver or estoppel, where he makes a timely request of his trial attorney to file an appeal, thereby placing the attorney under a duty to file it, instruct defendant how to file it, or secure other counsel for him. [Citations.] . . ." (See also *People* v. *Camarillo,* 66 Cal.2d 455, 458 [58 Cal.Rptr. 112, 426 P.2d 512]; *People* v. *Diehl,* 62 Cal.2d 114, 117 [41 Cal.Rptr. 281, 396 P.2d 697]; *People* v. *Flanagan,* 62 Cal.2d 63, 66 [41 Cal.Rptr. 85, 396 P.2d 389]; *People* v. *Tucker,* 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Johnson,* 61 Cal.2d 843, 845 [40 Cal.Rptr. 708, 395 P.2d 668].)

In deciding whether to grant the requested relief, we are confronted by two well-established but, in this case, contrary principles. ■ First, the findings of the referee, although not binding on this court, are entitled to great weight. (See, e.g., *People* v. *Sanchez,* 1 Cal.3d 496, 501 [82 Cal.

Rptr. 634, 462 P.2d 386]; *People* v. *Johnson, supra,* 61 Cal.2d 843, 845; *People* v. *Tucker, supra,* 61 Cal.2d 828, 831.) ■ Second, it is the policy of the appellate courts to hear appeals on the merits, and avoid, wherever possible, forfeitures of substantial rights on technical grounds. (*People* v. *Bailey,* 1 Cal.3d 180, 187 [81 Cal.Rptr. 774, 460 P.2d 974]; *People* v. *Acosta, supra,* 71 Cal.2d 683, 685; *People* v. *Tucker, supra,* 61 Cal.2d 828, 832.) ■ As we noted in *People* v. *Tucker, supra,* 61 Cal.2d 828, 832, "Doubts should be resolved in favor of the right to appeal. The court, whenever possible, should exercise the jurisdiction conferred upon it by rule 31(a), and grant relief, as a matter of policy, from the late filing of the notice."

■ After making an independent examination of the record as we are required to do (*People* v. *Tucker,* 61 Cal.2d 828, 831 [40 Cal.Rptr. 609, 395 P.2d 449]), we adopt the findings of the referee. Although neither the judge, the reporter, nor the public defender had an independent recollection of the proceedings at which judgment and sentence were pronounced, each testified that had he heard petitioner request that an appeal be taken from the judgment he would have acknowledged the request in the performance of his official duties. The judge testified that he would have ordered petitioner's attorney to file a notice of appeal on behalf of his client. The reporter would have reported the request in his transcript of the proceedings. The public defender would have immediately prepared a notice of appeal for the defendant's signature. None of these persons, each of whom recognized a duty to perform when a defendant states in open court that he wishes to appeal, acted to implement such an alleged request by petitioner. We are persuaded, as was the referee who also had the opportunity to observe petitioner's demeanor as well as the demeanor of all of the other witnesses in assessing credibility, that the probability that three public officials would each simultaneously fail to follow customary practices or to discharge a duty is sufficiently remote to warrant a finding that petitioner did not make such a request.

This is not a close case calling into play the established rule that doubt be resolved in favor of the right to appeal. The referee found that petitioner did not request his attorney to file a notice of appeal. We adopt that finding.

The petition for relief is denied.

**PETERS, J.**—I dissent.

The majority unhesitatingly recites the well established rule that wherever possible doubts must be resolved in favor of the petitioner for rule 31(a) relief. It just as unhesitatingly abandons it in favor of the find-

ings of a referee who clearly neglected to apply the rule liberally to grant relief. I must point out that the referee is every bit as bound to approach rule 31(a) claims with a liberal eye as this court is. Where, as here, he fails to do so, we must reject his findings.

The reason for liberal application of the remedial provisions of rule 31(a) should be apparent. The 10-day period for notice of appeal is short, the right to appeal one's conviction is most critical and precious and the defendant, who is often in the process of being transferred to a prison during the 10-day period, is not in a position to supervise his attorney's pursuit of his rights. The burden on the state in waiving the 10-day limit is relatively slight—a petitioner is not granted a new trial but merely a belated opportunity to exercise his right to test the legality of his conviction in an appellate court. The interest of the state that justice be done in criminal cases reinforces a defendant's claim that his appeal be considered on the merits. (E.g., *People* v. *Casillas,* 61 Cal.2d 344, 346 [38 Cal.Rptr. 721, 392 P.2d 521].)

These considerations require that doubts be resolved in favor of the petitioner for rule 31(a) relief. We cannot escape the duty to apply this liberal principle by appointing a referee to take evidence. When the referee acts for us he is as bound by the duty as we are.

In *In re Thornton,* 64 Cal.2d 484, 485-486 [50 Cal.Rptr. 556, 413 P.2d 156], we stated that in the simple case where a petitioner testifies that he requested an appeal and where the trial attorney testifies that he did not, the liberal rules of construction favoring the allowance of an appeal might weigh the scales in favor of the petitioner. (See also *People* v. *Sanchez,* 1 Cal.3d 496, 501 [82 Cal.Rptr. 634, 462 P.2d 386].)

This case is stronger than that hypothesized in *Thornton.* Petitioner finds himself in the most difficult of situations. None of the persons present in court—the public defender, the prosecutor, the judge nor the reporter— have any independent recollection of what occurred at his judgment and sentencing. Nor is this surprising since his offense was common, and his sentencing routine and one of many that morning. His entire sentencing consumed only two pages of transcript.

Petitioner's file with the public defender's office has long since been destroyed or lost. His attorney testified that he did not believe petitioner had asked him to appeal, on the rather dubious ground that if he had, the attorney would have done something about it or it would have "hung" on his mind. While we do not doubt for a moment the public defender's diligence, he is, as we all are (particularly if we are as busy as the typical public

defender) prone to an occasional oversight or memory lapse. The lack of recollection of the public defender, which of necessity must be considered as weaker than an unequivocal denial, cannot furnish a basis for refusing to resolve doubts in favor of the petitioner.

The evidence with respect to the reporter, the prosecuting attorney, and the judge do not even cast doubt on petitioner's claim for relief. It is unlikely that a court reporter would record a statement addressed by a client to his attorney "in a normal tone of voice." The prosecutor also would not be likely, as the prosecutor himself conceded, to remember that a defendant expressed a desire to appeal unless he made an issue of it. The judge would have ordered a notice of appeal filed if petitioner had stated his desire for an appeal in open court, but petitioner testified that he addressed his request to his attorney. Contrary to the majority's conclusion, it is unlikely that any of these parties would have heard or attended to petitioner's remark, or, if they had heard, would have remembered it.

In contrast, petitioner's contention, based on his independent recollection, is not improbable nor directly contradicted.[1] Moreover, petitioner's story is supported by the testimony of Doris Blunk and Sheila Mortham that they each visited him immediately after sentencing and he told them he was fighting the conviction.

I am satisfied that under the settled rule we must resolve any doubts in favor of petitioner. It borders on absurdity for this court to adopt and repeatedly reiterate a rule requiring resolution of doubts in favor of a petitioner and then abandon it when faced with precisely the kind of case where its application makes a difference.

Nor is there such unexplained delay as would constitute waiver or estoppel. The four-month period between sentencing and petitioner's first

---

[1] I do not believe that the discrepancy between petitioner's statement in his petition that he made his appeal request in open court and his testimony at the hearing that he made his request in a normal voice to his attorney constitutes a deliberate falsehood or even such a discrepancy as to cast doubt upon petitioner's version of events. (Contrast *In re Thornton, supra,* 64 Cal.2d 484, denying relief where parts of petitioner's testimony were demonstrably false and other parts inconsistent.) Petitioner's explanation that he did not write the petition but only stated what he remembered to the library clerk who then wrote it for him adequately accounts for the variation. The two versions are not fundamentally dissimilar. A statement in open court is only distinguishable from the statement in his normal voice in that it was addressed to his attorney rather than the judge. In other respects there was no difference. He was standing, facing the judge, and court was in session. The district attorney, reporter, and judge were all within earshot. Such a set of circumstances could easily be translated into "open court" by the clerk. Moreover, the legal impact of a private request for appeal to his attorney is identical to such a statement in open court, namely, it entitles him to rule 31(a) relief absent waiver or estoppel.

inquiry about his appeal is a reasonable time lapse for one who believes that his appeal is being pursued by his attorney. (See, e.g., *People* v. *Madrid*, 62 Cal.2d 602, 605 [43 Cal.Rptr. 638, 400 P.2d 750] (five-month lapse); *People* v. *Curry*, 62 Cal.2d 207, 212 [42 Cal.Rptr. 17, 397 P.2d 1009] (10-month lapse); *People* v. *Johnson* 61 Cal.2d 843, 844-845 [40 Cal. Rptr. 708, 395 P.2d 668] (seven-month lapse).) Once petitioner became aware that no appeal or notice of appeal had been filed, he pursued his relief with dispatch.[2]

The toll time takes on the memories of busy officers of the court should not be permitted to stand in the way when a defendant presents a credible and otherwise uncontradicted claim for relief from the 10-day limit on filing notices of appeal. In view of the importance of the right to appeal, the liberal policy in favor of permitting late filing, and the rule that reasonable doubt should be resolved in favor of the petitioner, I would reject the findings of the referee and grant the petition for rule 31(a) relief.

---

[2]Petitioner mailed his notice of appeal the day he received the letter from the clerk of the Court of Appeal informing him no appeal was pending and his petition for rule 31(a) relief a day or two after receiving word that the notice would not be filed. The Attorney General suggests that petitioner was able to be so prompt because he knew he had no appeal notice filed and had prepared the papers in advance for the purpose of obtaining rule 31(a) relief. No reason appears in the record to draw such a sinister conclusion. The notice of appeal is a short form document which was prepared for the petitioner by an inmate-clerk of the law library. The petition for rule 31(a) relief, a two and one-half page document, was also prepared for petitioner by the clerk.