[Crim. No. 9405. In Bank. Aug. 15, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD LEE RUCH, Defendant and Petitioner.

Edward Lee Ruch, in pro. per., and Frank C. Morales, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Petitioner, under rule 31(a) of the California Rules of Court, seeks relief from his default in failing to file his notice of appeal in a criminal case within the 10-day period required by law. Rule 31(a) provides for the granting of such relief in a proper case. ■ This power to relieve from default is to be liberally exercised to avoid, if reasonably possible, the loss of the right to appeal. (See *People* v. *Madrid,* 62 Cal.2d 602, 603 [43 Cal.Rptr. 638, 400 P.2d 750] ; *People* v. *Davis,* 62 Cal.2d 806, 807 [44 Cal.Rptr. 441, 402 P.2d 129], and cases cited therein.) ■ Even applying this liberal rule of construction, petitioner has not presented a proper case for relief.

The record shows that petitioner, then represented by a deputy public defender of Los Angeles County, was convicted of burglary by a jury on January 15, 1965. On February 8, 1965, sentence was imposed and probation denied. On July 2, 1965, a delayed notice of appeal was filed with the superior court, and when it was refused filing, petitioner filed the present petition seeking relief under rule 31(a). In that petition he alleged that on the day of his conviction he requested the public defender to file a notice of appeal, but that the public defender refused to do so. The public defender did not then tell the petitioner how to appeal, or the time limits or

procedures involved, nor did he attempt to secure for petitioner the services of another lawyer.

These allegations established a prima facie case sufficient to warrant a hearing on the petition. In *People* v. *Curry,* 62 Cal.2d 207, 210 [43 Cal.Rptr. 17, 397 P.2d 1009], the proper rule was stated as follows: ''. . . it is now settled that where there is a request to appeal within the 10-day period by the defendant, and a promise of the attorney to do so, or where there is such a promise but no such request, or where there is such a request but no promise, absent grounds of waiver or estoppel, the defendant is entitled to relief.''

Petitioner's right to relief is not necessarily foreclosed simply because the trial attorney tells him that he will not perfect the appeal. In *People* v. *Diehl,* 62 Cal.2d 114, 118 [41 Cal.Rptr. 281, 396 P.2d 697], it was stated: ''. . . where the defendant clearly indicates, as he did here, that he desires to appeal, the trial attorney is under a duty not to ignore that request. The trial attorney is under a duty either to file the notice of appeal, or to instruct the defendant as to the proper procedure, or to see that the defendant has counsel to do these things for him.'' (See also *In re Notz,* 62 Cal.2d 423, 425 [42 Cal.Rptr. 321, 298 P.2d 593]; *People* v. *Collier,* 62 Cal.2d 543, 544 [43 Cal.Rptr. 1, 399 P.2d 569]; *People* v. *Krebs,* 62 Cal.2d 584, 585 [43 Cal.Rptr. 331, 400 P.2d 323]; *People* v. *Madrid, supra,* 62 Cal.2d 602, 603; *People* v. *Davis, supra,* 62 Cal.2d 806, 808.)

Thus, if petitioner's allegations were in accordance with the facts, he would be entitled to relief. To ascertain the facts we appointed counsel for the petitioner and appointed as referee for this court the Honorable Thomas P. White, Retired Associate Justice of this court. The referee has held a full hearing, at which both petitioner and the trial attorney, as well as the probation officer, testified. After reviewing the record of this testimony the referee found:

''Under the foregoing evidentiary features of this case it seems clear to me that there was neither a request by Petitioner to appeal, a promise on the part of the Public Defender to appeal, nor an ineffectual effort on the part of Petitioner to appeal during the critical 10-day period. Petitioner's plea for relief therefore lacks substance, and I find that within 10 days after rendition of Judgment Petitioner made no statement in regard to an appeal to the attorney who represented him at his trial, and at no time indicated to the attorney his desire to appeal.''

The referee also found: "From a review of the factual background as revealed by the evidence contained in this record and herein narrated, I am persuaded that no facts are presented which when considered together are sufficient to explain what to me amounts to an unreasonable delay on the part of Petitioner. I therefore find that Petitioner has waived his right to move for a delayed appeal at this time."

The parties have stipulated that the case may be decided on the report of the referee, and have waived briefing and calendaring of the case.

An examination of the report demonstrates that the basic findings of the referee are not only substantially supported by the evidence and the reasonable inferences therefrom, but are in accord with the overwhelming weight of that evidence.

While the record shows that petitioner testified that when the jury returned its verdict his trial counsel turned to him and said "You're found guilty," whereupon petitioner replied, "Why I don't see how I could have been. I want you to appeal this case." Petitioner testified the attorney replied, "I'm sorry, but the Public Defender's Office does not give an automatic appeal only in a death sentence." Petitioner stated that he then asked, "What do I do?" and the attorney only shrugged. While he conceded that he had no further communications with his attorney while in the county jail, or at any time thereafter, he testified he did have a conference with his probation officer in which the latter inquired if he had appealed his conviction, and that he answered, "Yes."

While this evidence would probably support a finding of a request to appeal, and a finding that while talking to the probation officer petitioner believed an appeal had been taken, had such findings been made, they were not. Instead, contrary findings were made, and for good reason.

The report of the probation officer, made while the facts were fresh in his mind, states, "He does not recall asking the Public Defender to appeal the case to a higher Court. He asked the Public Defender if he could appeal, and the Public Defender said he, the Defendant, would have to do it himself."

Moreover petitioner admitted that prior to filing his motion for relief from default he at no time thought an appeal had been taken. He admitted that he talked to no official about an appeal while he was in the county jail, nor did he talk to the public defender about an appeal on the day he was sentenced. From February to March he was at Chino, and admittedly

talked to no official there about an appeal, although he did visit the law library but found nothing helpful. He admitted that when he was transferred to San Quentin he talked with no official there about an appeal but, when he visited the law library, he did talk with some of the inmates, and learned from one of them about rule 31(a). In response to a direct question on cross-examination, he admitted that after the public defender told him he would not appeal he did not think that an appeal had been taken. During the entire five-month period before he filed his delayed notice of appeal he did not rely on any representation of the public defender that he was going to appeal—''I didn't think anybody would do nothing unless I done it.'' During this five-month period he did not communicate with his family, with the public defender, or with any official about an appeal.

The deputy public defender who represented petitioner at the trial testified that he had no independent recollection of any conversation with petitioner about an appeal and conceded that he had taken no steps to perfect an appeal. But he described in some detail his usual practices in such cases. He stated, among other things, that on occasion he had filed notices of appeal on behalf of defendants even when the public defender's office had no intention of representing the defendant on appeal. On such occasions he would prepare the notice of appeal for the defendant, have him sign it in propria persona, and then would personally file it with the clerk. If he felt there was no merit to an appeal, he would not advise the defendant to appeal, but if the defendant started such a discussion and expressed a desire to appeal, he would tell the defendant that, while he did not think there was any merit in appealing, if defendant wanted to do so he could file such a notice himself. If defendant asked him how to proceed he would tell him the required contents of such a notice and the time limits within which it had to be filed.

The county probation officer who prepared the probation report on petitioner's case, and who was told by petitioner, according to petitioner's testimony, that he had appealed his case, had no independent recollection of the interview outside of his report. But he testified that he usually dictated his report within 10 days of the interview with the defendant, and that when he dictated the report on defendant the facts were fresh in his mind. He also stated that as petitioner talked he had taken notes of the conversation and also secured from the petitioner a written statement. When shown the portion of his report which reads, ''He does not recall asking the Public

Defender to appeal the case to a higher Court. He asked the Public Defender if he could appeal, and the Public Defender said that he, the Defendant, would have to do it himself'' he stated that outside of his report he had no independent recollection of that conversation. He also stated that it was his general policy to ask about pending appeals, and that the report represented his best recollection of what occurred.

Based on this testimony the referee found that the petitioner had not requested the public defender to appeal, and that the public defender had not promised to do so. That this lack of belief in petitioner's testimony was justified is amply demonstrated by the facts already summarized. Of some significance is the fact that while petitioner was in the county jail, at Chino, and at San Quentin, until he filed his delayed notice of appeal, he did not communicate or attempt to communicate with any court, with the public defender, with any of the jail or prison officials, or with his family, about an appeal, that he admitted that during this period he did not believe any step had been taken to perfect an appeal. Moreover, petitioner's testimony that he requested the public defender to appeal is inconsistent not only with the testimony of the public defender but also with that of the probation officer. Under such circumstances it must be held that the findings that there was neither a request to appeal nor a promise to do so, and that there was an inexcusable delay in seeking relief, are amply supported by the record. These findings, although not binding on this court, are entitled to great weight. Being supported by the weight of the credible evidence they are adopted as the findings of this court.

The petition for relief under rule 31(a) is denied.

Traynor, C. J., Tobriner, J., Peek, J., and Mosk, J., concurred.

McComb, J.—I concur in the judgment.