[Crim. No. 11518. In Bank. July 8, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL LORENZO HERNANDEZ CASTILLO, Defendant and Petitioner.

Paul Lorenzo Hernandez Castillo, in pro. per., and Don Edgar Burris, under appointment by the Supreme Court, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Stephen Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Petitioner seeks an order permitting him to file a late notice of appeal pursuant to rule 31(a) of the California Rules of Court. Rule 31(a) requires that notice of appeal in a criminal case be filed within 10 days after rendition of judgment but empowers appellate courts to grant relief from default in proper cases. Petitioner has not presented such a case.

Petitioner was charged with violation of Health and Safety Code, section 11500 (possession of heroin) and of Health and Safety Code, section 11501 (sale of heroin). He pleaded guilty to the possession charge, and the sale charge was dismissed. He admitted a prior conviction of violation of section 11500 on May 9, 1959, for which he served a term in state prison. Judgment was entered on October 21, 1966, sentencing him to state prison. The trial judge denied petitioner's request for commitment to the California Rehabilitation Center, a narcotic detention, treatment and rehabilitation facility. Petitioner did not, as required by rule 31(a), file "a written notice of appeal with the clerk of the superior court within 10 days after the rendition of the judgment. . . ." His first attempt to appeal was in the form of a petition under rule

31(a) for leave to proceed on belated appeal, filed in the Court of Appeal on June 14, 1967, nearly eight months after sentencing.

This court, upon granting a hearing, appointed counsel for petitioner and appointed a referee, the Honorable Irving H. Perluss, Judge of the Superior Court of Sacramento County, to conduct an evidentiary hearing. The significant evidence adduced at the hearing may be summarized as follows:

Petitioner testified that on or about September 20, 1966, before he had pleaded guilty, he spoke with his retained trial attorney, Richard Walton, in the "holdover cell of Department 102," and that it was mentioned that there would be an appeal in the event that petitioner's commitment to the California Rehabilitation Center, pursuant to a plea bargain which had been made, did not materialize. According to petitioner, this conversation was overheard by a fellow prisoner, Henry Castro, who was sitting next to petitioner in the holding cell at the time.

Petitioner also testified that on the day he was sentenced to prison he asked Walton if he were going to appeal, and that Walton replied "[t]hat he would take care of everything. . . . [and] would be up to see me later." Petitioner claims that this conversation took place outside the door of the holding cell to which he was returned after sentencing with no one else present. He said that he understood Walton's alleged remark to mean that Walton was going to take care of an appeal.

Henry Castro, a fellow prisoner who had suffered four felony convictions, corroborated petitioner's account of his conversation of September 20, 1966, with Walton. Records from the superior court showed that petitioner and Castro appeared in Department 102, the late Judge Ziemann's court, on the same day on only one occasion, October 21, 1966; thus, it is unlikely that petitioner and Castro were in the holdover cell on or about September 20, 1966.[1]

Walton could not recall specifically whether he had dis-

[1]In his brief containing objections to the referee's report petitioner points to two factors which suggest that it is at least *not improbable* that Castro was in the holding cell with petitioner as he and petitioner claimed. First, superior court records show that Judge Ziemann, who died either the day he sentenced petitioner (October 21, 1966) or the day after, was absent from his courtroom on numerous occasions prior to his death due to illness, and it was often necessary for some other judge to call his calendar and postpone or transfer the cases on it. Thus, Castro, who was tried but not sentenced in Judge Ziemann's court, might have been placed in the holding cell for Department 102 on or about

cussed an appeal with petitioner. He testified that since ordinarily there is no appeal from a plea of guilty, he would not have been thinking in terms of an appeal and that since none of the exceptional circumstances in which there might be an appeal occurred to him, he was "compelled to the conclusion" there was no conversation with regard to an appeal. While maintaining that he did not recall any conversation relative to an appeal at any time, he conceded that he could not precisely recall all of the matters discussed with petitioner and could "perhaps, visualize the possibility of some conversation about a motion to vacate the plea or set aside the judgment which might have been . . . and still might be more appropriate, . . ." Walton recalled talking to petitioner on one occasion in the holding cell for Department 102 and said other prisoners were in the cell on that occasion.

Walton denied having told petitioner right after he was sentenced, "I will take care of everything." When asked "Do you recall ever making that statement to him at any point in time?" he replied, "Well, I might have, but, again, it would not, at least, have been contemplated by me that it included handling an appeal for the matter."

On April 23, 1967, some six months after judgment was entered against petitioner, he wrote a letter to Walton in which he first described his life in prison and then stated: "Well counselor, now I'll say what you have most likely been dreading to hear. What about my case? *In view of the latest measures in the Legislature, considering cases such as mine, what, really, can be done? Also, I don't want you to think that I'm trying to find the key out. No. I only want to shorten the stay, if possible, or find a more favorable place to ride this long hump.* What seems to be the latest on hospitals, in view of the recommendations of the court on this and the prior conviction? *Give me something to do. Or prepare yourself for doing it. You know that all you have to do is tell me to arrange for your fees.* But damn it!, tell me something regardless! And if you want to take it up, or want to aid me

September 20, 1966 (as claimed), even though the court records show that he did not appear in Department 102 near that date. Castro stated that he "believe[d]" he appeared in court on the day he claimed he was in the holding cell with petitioner; he acknowledged that he would not have been there if he were not scheduled to go to court, but he added that he "believe[d]" his case was then in the stage of proceedings "between my plea and my trial. I had a few postponements there." Second, Castro was represented on or about September 20, 1966, by one Bradford A. Arthur, and Castro testified that Arthur failed to appear on three occasions, postponements apparently resulting.

in taking it up myself 'pro-per,' [*sic*] please do so, as I will need all the help I can get. . . . Also, should you have to come up to see me in regards to the matter at hand, then do so, by all means. *I hope that I can count on you to help me on all or part of this task I wish to undertake.*'' (Italics added.)

Regarding petitioner's knowledge of the 10-day period after judgment within which a notice of appeal must be filed, petitioner testified that he was unaware of the requirement, and Walton testified that he did not tell petitioner about the 10-day period.

The referee found on the basis of uncontradicted evidence that petitioner's counsel did not advise him of his appeal rights and that petitioner was not aware of the 10-day appeal limitation period. He also found that petitioner did not request his attorney to file an appeal, either before or within 10 days after judgment and that petitioner's attorney neither said nor did anything with respect to an appeal either before or within 10 days after judgment.

█ A criminal defendant seeking relief from his default in failing to file a timely notice of appeal is entitled to such relief, absent waiver or estoppel due to delay, if he made a timely request of his trial attorney to file a notice of appeal, thereby placing the attorney under a duty to file it, instruct the defendant how to file it, or secure other counsel for him (e.g., *People* v. *Camarillo,* 66 Cal.2d 455 [58 Cal.Rptr. 112, 426 P.2d 512]) ; or if the attorney made a timely promise to file a notice of appeal, thereby invoking reasonable reliance on the part of the defendant (e.g., *People* v. *Flanagan,* 62 Cal.2d 63 [41 Cal.Rptr. 85, 396 P.2d 389]). █ Under the decision this day in *People* v. *Acosta, ante,* p. 683 [78 Cal. Rptr. 864, 456 P.2d 136], such a defendant may also be entitled to relief if his default was caused by ignorance of the right to appeal or of the 10-day period within which a notice of appeal must be filed. █ In the present case, petitioner is not entitled to relief on any of these grounds.

We adopt as the findings of this court the referee's findings that petitioner did not make a timely request that his trial attorney file an appeal and that the attorney made no promise to do so. (Compare *People* v. *Camarillo, supra,* 66 Cal.2d 455, 458; *People* v. *Ruch,* 65 Cal.2d 138, 143 [52 Cal.Rptr. 585, 416 P.2d 817].) Furthermore, although the referee did not explicitly so find, we find that petitioner did not reasonably believe that his attorney would file an appeal. In *In re Thornton,* 64 Cal.2d 484 [50 Cal.Rptr. 556, 413 P.2d 156], we

upheld the referee's findings that petitioner had not requested his trial attorney to file an appeal, that the attorney had not promised to file an appeal, and that petitioner did not reasonably believe that the attorney would file an appeal. We denied relief, noting that "part of petitioner's testimony [was] demonstrably false and other parts inconsistent or subject to doubt." (64 Cal.2d at p. 486.) We distinguished that case from "a simple case of the petitioner testifying that a request to appeal and a promise to appeal were made, and the trial attorney testifying that they were not [where] . . . liberal rules of construction favoring the allowance of an appeal might weigh the scales in favor of petitioner [e.g., *People* v. *Garcia*, 63 Cal.2d 265, 268 [46 Cal.Rptr. 324, 405 P.2d 148]; *People* v. *Davis*, 62 Cal.2d 806, 808 [44 Cal.Rptr. 441, 402 P.2d 129]]. . . ." (64 Cal.2d at pp. 485-486.)

The present case is like *Thornton* rather than the type of case distinguished in the *Thornton* opinion. Here, as in *Thornton*, there is more than a mere conflict in testimony concerning a request or promise to appeal. Petitioner's letter to Walton, dated six months after judgment, casts the gravest of doubts on petitioner's allegations that his attorney promised to appeal and that petitioner reasonably believed the attorney would do so. Thus, the referee's findings in the present case are clearly supported by the weight of credible evidence, and the rule of resolving reasonable doubts in favor of the 31(a) petitioner in close cases (e.g., *People* v. *Garcia*, *supra*, 63 Cal.2d 265, 268; *People* v. *Davis*, *supra*, 62 Cal.2d 806, 808) is inapplicable.

Although petitioner knew he had a right to appeal[2] it is undisputed that he was unaware of the requirement that a notice of appeal must be filed within 10 days after rendition of judgment. Petitioner is not entitled to relief on this basis under *Acosta*, however, since he has failed to demonstrate that his failure to file a timely notice of appeal was *caused by* his ignorance of the 10-day rule. The relevant evidence strongly suggests that ignorance was not the cause of his delay; it indicates, rather, that it was probably not until at least six months after sentencing that petitioner formed the desire to exercise his right to appeal. It appears most likely that petitioner did not decide to seek an appeal until nearly eight

---

[2]Petitioner does not claim that he was ignorant of his right to appeal. Moreover, in view of the fact that he served a term in state prison for a 1959 conviction, we are entitled to assume, absent a showing of extraordinary circumstances, that he was well aware of that right.

months after sentencing, after giving up hope of securing transfer to a medical facility. The decision in *Acosta* does not provide relief in such circumstances. It does not permit a prisoner—whether or not he is ignorant of the 10-day period for filing a notice of appeal—to purposefully forego his right to appeal and then later, when the unpleasantness of prison life becomes more unbearable, change his mind.

The petition for relief under rule 31(a) is denied.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Petitioner's application for a rehearing was denied August 6, 1969.