Filed 10/7/25  P. v. Flores CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OCTAVIO JESUS FLORES,<br><br>    Defendant and Appellant. | D083204<br><br><br><br>(Super. Ct. No. SCS322488) |

APPEAL from a judgment of the Superior Court of San Diego County, Amalia Meza, Judge.  Affirmed as modified; motion to constructively file notice of appeal denied.

Galit Lipa, State Public Defender and Inga K. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Robin Urbanski, Supervising Deputy Attorney General and Anastasia Sagorsky, Deputy Attorney General for Plaintiff and Respondent.

Octavio Jesus Flores appeals from a postjudgment victim restitution order entered after he pleaded guilty to forgery for altering odometers of vehicles sold to the victims, S.D. and H.O. Flores contends: (1) he was denied his constitutional right to be present at the restitution hearings, and his attorney improperly waived his presence under Penal Code,[1] section 977; (2) H.O. was not a direct victim of his criminal acts; (3) the court abused its discretion in calculating H.O.'s restitution; and (4) S.D.'s restitution order was appealable or, alternatively, this court should deem the notice of appeal filed as applying constructively to S.D.'s restitution order. We find merit in the third contention, and therefore affirm the judgment modified to reduce H.O.'s restitution award as specified below. We deny Flores's motion for constructive filing of the notice of appeal as to S.D.'s restitution order.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2019, S.D. purchased a vehicle from Flores. Department of Motor Vehicles (DMV) investigators subsequently advised S.D. that the vehicle's odometer had been altered.

In July 2020, Flores sold D.B. a van with an odometer reading of 141,000 miles, despite the fact that when Flores had earlier bought the same van in October 2019, its odometer reading was 273,000 miles.

In September 2020, D.B. sold the van to H.O. for $8,000.[2]

*Flores's Plea Agreement*

---

[1] Undesignated statutory references are to the Penal Code. Section 977 subdivision (b)(1) provides: "[I]n all cases in which a felony is charged, the accused shall be personally present [at all significant stages of the prosecution] . . . unless they waive their right to be physically or remotely present, with leave of court and with approval of defendant's counsel."

[2] The record does not show that any restitution was awarded to D.B.

In January 2023, Flores pleaded guilty to one count of forgery (§ 470, subdivision (d)[3]) and the court granted the People's motion to dismiss the remaining charges, including count 5 (§ 532, subd. (a)) relating to him using false pretenses as to the D.B. sale.[4] He waived certain rights under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*). The court explained to Flores its interpretation of his plea agreement form: "[It] tells me you wish to plead guilty to count 1. . . . That's forgery of documents and items. In exchange for that plea, the People have agreed to dismiss the balance of the complaint against you. They've agreed to a NOLT.[5] That means you'll be placed on felony probation. You will be responsible for paying restitution, and the amount of that restitution will be determined at your sentencing date. After one year of successful probation and full payment of restitution, and 50 hours of voluntary community service, and if you do not engage in auto sales, unless you have a license, then the People would have no objection to having the

---

[3] Section 470, subdivision (d) provides: "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: . . . certificate of ownership or other document evidencing ownership of a vehicle or undocumented vessel[.]"

[4] The other dismissed charges against Flores were count 2, under Vehicle Code section 12120, which prohibits sales of vehicles by someone who is not a dealer or the registered owner, and count 12, under section 532, subdivision (a), which punishes the use of false pretenses to obtain money. The remaining charges in the complaint were committed by Flores's brother and codefendant, Christian Flores.

[5] "NOLT" is an acronym for "No Opposition to Local Time," which means the People will allow the defense to offer sentencing alternatives to incarceration without any opposition.

matter reduced to a misdemeanor, pursuant to [section 17, subdivision (b)]." Flores confirmed he understood those terms. He initialed a section of the plea form stating he agreed to be responsible for paying restitution of between $300 and $10,000.

The February 13, 2023 probation report stated the victims reported losses of $11,700 as follows: $3,200 by D.B; $2,500 by S.D.; and $6,000 by H.O.

*Flores's Sentencing Hearing*

The probation officer recommended probation to enable Flores to remain gainfully employed and start making payments toward his restitution as soon as possible.

At the February 16, 2023 sentencing hearing, Flores stated he understood his probation conditions. He specifically requested the court allow him to commute to Tijuana, Mexico "because I cross every day to go to work." The court granted that request: "[Flores] is permitted to travel to and reside in Mexico providing that he's in full compliance with his conditions of probation and providing that he lets [the Probation Department] know the exact address where he works and his work hours so [it] can check on him periodically at his work." The court sentenced Flores to two years formal probation.

At the end of the sentencing hearing, the court inquired about restitution. Flores's counsel replied, "[W]e just got an updated number today that I have not been able to corroborate with Mr. Flores. So we are requesting a restitution review on March 30th for status." The court granted that request. It asked defense counsel if Flores was giving "a [section] 977 waiver for the restitution [hearing]." Counsel replied in the affirmative. The

4

court did not further elaborate on the waiver or inquire about Flores's understanding of it.

*Restitution Hearing in the S.D. Matter*

At a June 26, 2023 restitution hearing, defense counsel stated he was "appearing [according to section] 977 on behalf of [Flores]." The parties stipulated Flores would pay S.D. $3,194.22 in restitution, starting August 1, 2023. The trial court stated it would sign an order to that effect. A minute order for that hearing reflects a 20-cent difference in the restitution ordered, which was in the amount of $3,194.42.

On October 19, 2023, the court signed an "Order for Victim Restitution" and issued an "Abstract of Judgment—Restitution," which both state the restitution amount as $3,194.42. The latter document states: "Judgment was entered on . . . June 26, 2023[.]"

*Restitution Hearing in the H.O. Matter*

At a November 9, 2023 restitution hearing on H.O.'s claims, Flores's same counsel again stated he was appearing "[according to section] 977 on his behalf."

A DMV investigator testified he used a database to assess the value of H.O.'s van based on its year of manufacture, make, model and mileage. He obtained different valuations depending on "whether the condition of the van mileage, wear and tear as far as what the inside looks like. If it's moderate, if it's clean . . . then the [vehicle's] price either goes down or goes up." Specifically, the van's rough trade-in value was $2,605; its average trade-in value was $3,830; its clean trade-in value was $4,830; and its clean retail value was $7,630.

The DMV investigator also testified D.B. and other victims reported that Flores had advised them to claim a lower purchase price than they

5

actually paid for their vehicles in order to reduce their taxes and vehicle registration fees. The certificate of title transferring the van to D.B. indicated his purchase price was $1,000; and he paid a $277 registration fee. H.O. paid $775 in registration fees.

H.O. testified that after she purchased the van, she incurred $4,220 for repairs for alignment, window screens, headlights, and replacing a catalytic converter (which she purchased for $2,892.49). By the time H.O. replaced the catalytic converter, which occurred within one year before the restitution hearing, she already knew the van's true mileage. H.O. also paid $3,133.52 to build out the van by retrofitting it with flooring, ceiling panels, a bench, a bed, and shelving units.

The prosecutor argued the court had broad discretion to order restitution as a probation term under section 1203.1, subdivision (j). He also argued section 1202.4 provided a separate basis for restitution. He sought $11,298.77 in restitution for H.O. as follows: $3,170 (the van's $8,000 purchase price minus its $4,830 clean trade-in value), $775 (vehicle registration fee), $4,220.25 (automotive repair) and $3,133.52 (build-out expenses).

Defense counsel opposed the prosecutor's restitution calculations: "[T]he $4,220.25, that, I believe, includes the catalytic converter . . . . That was purchased in August of this year. Well over a year after it was known the mileage of the vehicle. So the argument that these repairs would not have been made if all of the facts were known I believe is incorrect . . . . And then also for the difference between the purchase price and the clean trade-in value. I don't believe that it can be shown that this purchase price had anything to do with [ ] Flores's actions. This vehicle was purchased by [H.O.] from [D.B.], who had bought the vehicle three months earlier, had sold it, had

6

committed a crime of lying on his paperwork. . . . I think there's no way for us to know what [ ] Flores got out of this. So even the difference between the purchase price and the clean trade-in value, it's also referenced in the fact that [D.B.] got a windfall on his taxes, his registration fees. And then, of course, I would also say that the build-out expenses are not . . . reasonable or foreseeable."

*The Court's Ruling and the Notice of Appeal*

The court ruled from the bench: "[T]here is a nexus between the losses incurred by [H.O.] in the amount of $8,165.23. That excludes the build-out. Everything else [H.O. is] entitled to recover." Immediately afterwards the court stated the restitution amount as $8,165.25. It ruled Flores and his codefendant were jointly and severally liable for the restitution. It added that monthly payments were to begin January 1, 2024. The court's minute order does not specify a statutory basis for the restitution order. However, at the close of the hearing the court requested that the People prepare an order. The prosecutor immediately produced one. The court signed the order, which stated that restitution was ordered "[p]ursuant to . . . [s]ection 1202.4[, subdivision] (f)."

In November 2023, Flores filed a notice of appeal of only the H.O. restitution order.

In July 2024, Flores filed a motion requesting that we construe the notice of appeal as including the October 19, 2023 restitution order as to S.D. We denied the motion for lack of jurisdiction because an appeal of that order was untimely, but without prejudice to him filing a motion to have us deem an appeal of the S.D. restitution order constructively filed. Flores subsequently filed such a supplemental motion, arguing that as his constitutional and statutory right to be present at the restitution hearings

7

was violated, his trial counsel had a proper basis to appeal the S.D. order; however, his attorney provided ineffective assistance by not complying with his request to appeal that order. We ordered Flores's supplemental motion be considered with this appeal.

## DISCUSSION

### I. *Waiver of Flores's Presence at the Restitution Hearings*

Flores contends he had a constitutional right to attend the restitution hearings, and his counsel's waiver of his presence under section 977 was invalid. He further contends he was prejudiced because if he had attended, he could have corrected his counsel's inaccurate representation to the court that he was convicted of the dismissed count of selling the van to D.B. (count 5); clarified how much D.B. had paid for the van; and assisted his counsel regarding the van's valuation and, possibly, obtained a lower restitution amount.

### A. *Applicable Law*

A criminal defendant has a constitutional and statutory right to be present at critical stages of a prosecution, including the imposition of victim restitution. (*People v. Nieves* (2021) 11 Cal.5th 404, 508 (*Nieves*); §§ 977, subd. (b)(1), 1193.) This right may be waived if the waiver " 'is voluntary, knowing and intelligent.' " (*Nieves, supra,* at p. 508, quoting *People v. Davis* (2005) 36 Cal.4th 510, 531.) Defense counsel may waive the defendant's presence, "but only if there is evidence that the defendant consented to the waiver. [Citations.] At a minimum, there must be some evidence that the defendant understood the right he was waiving and the consequences of doing so." (*Davis,* at p. 532.)

In *People v. Cooks* (2023) 89 Cal.App.5th 1124, 1127 (*Cooks*), the only discussion of the defendant's absence at the restitution hearing was the trial

court's inquiry about the existence of a section 977 waiver, and defense counsel's affirmative response. (*Id.* at p. 1226.) On appeal, this court concluded: "[Appellant] may have a point that the record does not demonstrate he validly waived his right to be present at a future restitution hearing. [Citations.] With no discussion of what a '[section] 977 waiver' was, it is hard to see how [appellant] impliedly waived his right to be present at a future hearing." (*Cooks, supra,* at p. 1126.)[6]

Nonetheless, courts addressing this type of claimed error typically evaluate whether a defendant's *nonappearance* following an invalid waiver resulted in prejudice under the more stringent harmless beyond a reasonable doubt standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. (See *Nieves, supra,* 11 Cal.5th at pp. 508-509 [it was harmless error to hold a victim restitution hearing outside defendant's presence without a valid waiver].)

B. *Analysis*

In light of *Cooks*, *supra,* 89 Cal.App.5th at p. 1127, the People concede that Flores's counsel's claim of waiver likely was "similarly insufficient for lack of evidence that it was intelligent, knowing, and voluntary."

We assume without deciding that Flores did not properly waive his presence at the restitution hearings. We therefore undertake a prejudice analysis. Although defense counsel mistakenly told the court Flores was convicted of a forgery charge relating to the van sale to D.B., that statement did not prejudice Flores because under his *Harvey* waiver, the court could take into account the facts surrounding that dismissed charge. "If restitution

---

6      This court did not have occasion to decide if the section 977 waiver was valid because no restitution hearing had been held outside Cooks's presence, nor was it clear that one would ever occur. (*Cooks, supra,* 89 Cal.App.5th at p. 1127.)

9

is imposed which is attributable to a count dismissed pursuant to a plea bargain, as described in this section, the court shall obtain a waiver pursuant to [*Harvey*] from the defendant as to the dismissed count." (§ 1192.3, subd. (b).)

As stated, defense counsel informed the court at the February 16, 2023 sentencing hearing that he needed an opportunity "to corroborate with Mr. Flores" certain recently-acquired information. The court therefore set a restitution review for approximately six weeks later. However, H.O's restitution hearing took place nearly nine months later, in November 2023. Accordingly, we may infer in favor of the court's restitution order that defense counsel ". . . 'had ample opportunity to discuss . . . with defendant and to seek [his] assistance . . . . Assuming [counsel] did so, defendant's presence at the hearing would have added little to [his] attorney['s] ability to argue' the propriety of the victim restitution payments." (*Nieves*, *supra,* 11 Cal.5th 404, 509.) Finally, as set forth above, defense counsel at H.O.'s restitution hearing presented comprehensive and detailed objections to the restitution amount. (*Ibid.* [finding "nothing in the record to indicate that defendant would have added any significant information about her inability to pay [restitution] beyond that presented by defense counsel"].) We therefore conclude Flores was not prejudiced by his attorney's waiver of his presence at H.O.'s restitution hearing.

## II. *The H.O. Restitution Order*

Flores contends the H.O. restitution order must be stricken because he did not sell the van to H.O., but rather to D.B.; therefore, H.O. was not the object of the count 1 forgery. Relying specifically on the court's signed order, Flores argues: "Mandatory victim restitution ordered pursuant to section

1202.4 is only authorized for persons who are direct victims, meaning the object of the defendant's criminal conduct."

Flores alternatively contends the court abused its discretion by ordering: "1. Restitution for the difference in value between what [H.O.] paid and the clean trade-in value of the van based on actual mileage without clearly articulating the method it used to calculate valuation and why restitution was owed under that calculation; [¶] 2. [ ] Flores to pay the cost of both repairs [H.O.] performed in the three years since she purchased the van and the difference in value between [H.O.'s] purchase price and the clean trade-in value based on the actual mileage; and [¶] 3. The full cost of [H.O.'s] DMV registration."

A. *Applicable Law*

We review restitution orders for an abuse of discretion. (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 852; *People v. Giordano* (2007) 42 Cal.4th 644, 663.) That standard "is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)

California crime victims have a constitutional right to full restitution for economic losses suffered as a result of a defendant's criminal conduct. (Cal. Const., art. 1, § 28, subd. (b)(13).) A victim's right to restitution is to be broadly and liberally construed. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

The scope of restitution depends on the type of sentence the trial court imposes. When a defendant is ordered to pay restitution as a condition of

probation under section 1203.1, the defendant's agreement gives courts broader discretion to impose restitution, which they may do so as long as "the restitution condition [is] reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123 (*Carbajal*).) Courts may order probationers to pay restitution for losses resulting from "related conduct not resulting in a conviction," as well as "conduct underlying dismissed and uncharged counts." (*Id.* at p. 1121.) This wider scope arises from the rehabilitative purpose of probation and allows trial courts to order restitution beyond what is permissible under section 1202.4, which applies when a defendant receives a nonprobationary sentence. (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101; see also *People v. Anderson* (2010) 50 Cal.4th 19, 29 ["When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader"].)

" '[E]ven though the trial court has broad discretion in making a restitution award, that discretion is not unlimited. While it is not required to make an order in keeping with the exact amount of loss, the trial court must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) The goal of direct restitution is to restore the victim to "the economic status quo." (*People v. Giordano, supra,* 42 Cal.4th at pp. 658, 663-664.) "A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.)

B. *Analysis*

Flores's arguments that section 1202.4 was the exclusive basis for the restitution order and that H.O. was not a direct victim of his crimes are unavailing because, by operation of law, section 1203.1, subdivision (j) provided a valid basis for the court's restitution order. In *Carbajal, supra,* 10 Cal.4th at p. 1122, the defendant argued that then section 1203.04, subdivision (a)(1) (the predecessor statute to section 1202.4) limited the permissible restitution to losses *caused by the crime* of which a defendant is convicted. However, the court disagreed. It relied on the trial court's broad discretion to set probationary terms under section 1203.1, subdivision (j), and specific statutory language in section 1203.04, subdivision (g) that declared the legislative intent *not* to abrogate the trial court's broad discretion to fashion conditions of probation. (*Carbajal,* at p. 1122.)

Here, we acknowledge that the court's signed order stated restitution was ordered under section 1202.4; however, the court was aware of its discretion to order restitution as a condition of probation. In fact, the probation officer recommended Flores serve probation in order for him to work and pay off his restitution. The People also advocated this position in their moving papers and closing arguments. As stated, the same judge who sentenced Flores to probation, including the term permitting him to continue commuting to work in San Diego from Mexico, ordered H.O.'s restitution.

Nevertheless, we do agree with Flores's specific argument that the court abused its discretion because the restitution order "included both the decreased value of the van based on actual mileage and the cost of repairs that were already reflected in the decreased value of the van based on its actual mileage, resulting in a windfall to [H.O.]." Flores relies on *People v. Sharpe* (2017) 10 Cal.App.5th 741, 743, in which the defendant rammed into

13

the victim's vehicle, disabling it. (*Id.* at p. 744.) The trial court in that case ordered restitution both for the decrease in the fair market value of the truck and the cost of repairing the truck. The Court of Appeal concluded that was improper: "The trial court based its restitution order on the fair market value method, but it abused its discretion by also awarding the cost to [the victim] to repair the truck. . . . Having fully recovered the decrease in fair market value, [the victim] was not entitled to also recover the cost of repair because repairing the truck made it more valuable." (*Id.* at p. 747.)

Similarly, the $3,170 that the court awarded for the trade-in value of H.O.'s van represented the van's fair market value. As the DMV investigator testified, the database he consulted to calculate the van's value took into consideration "the condition of the van mileage [and] wear and tear as far as what the inside looks like." Therefore, by awarding H.O. an additional $4,220.25 for repair expenses incurred (including for a $2,892.49 catalytic converter she bought more than a year after purchasing the van), the court abused its discretion by overcompensating her. Accordingly, the restitution award should be reduced by the amount awarded for repairs.

Finally, Flores claims H.O. was not entitled to restitution for the full $775 vehicle registration fee, which assertedly had no factual basis and resulted in a windfall for her: "She retained the vehicle and would have had to pay registration fees for it based on its actual value, which the prosecution argued and the court impliedly found was $4,830. Thus, she would have had to pay more in registration fees than the $277 [D.B.] paid based on a $1,000 value, but less than the amount she actually paid. Her actual loss was therefore the difference between the registration fee she actually paid and what she would have paid based on the actual value of the vehicle." We conclude this argument has merit. As H.O. would have had to pay a

14

minimum of $277 to register the van (assuming its market value was at least $1000), by deducting that amount from the $775 that she paid the DMV, her new vehicle registration fee restitution award is $498.

In light of the above reductions from the amount the trial court awarded ($8,165.23 minus $4,220.25 (repairs) minus $277 (vehicle registration), H.O.'s total restitution amount is now $3,667.98.

### III. *Appealability of the S.D. Restitution Order*

Flores contends that even if the trial court's oral recitation of S.D.'s restitution on June 26, 2023, was an appealable order, "the filing of the written restitution order and abstract of judgment—on October 19, 2023—constituted a subsequent court action regarding restitution that makes it the controlling order, which is separately appealable." He alternatively contends: "Regardless of whether this court finds that the June 26, 2023 discussion or the October 19, 2023 written order is the appealable restitution order directing [him] to pay [S.D.] restitution, this court should find that it can be challenged on appeal through the doctrine of constructive filing."

Flores attached his declaration, dated August 2024, to his supplemental motion for constructive filing, stating he was absent from the S.D. restitution hearing and does not know how or why the restitution amount was determined. Without specifying a date, he states, "After my trial attorney . . . told me about the restitution orders, I told him I wanted to appeal. I was unaware, because [my attorney] did not tell me, that each order needed to be listed separated [*sic*] on a notice of appeal." Flores adds: "I have no legal training and my ability to read English is very limited. As a result, I did not know that [my attorney's] decision to cite only the November 9, 2023 order meant that I could not also challenge the October 19, 2023

15

restitution order for [S.D.]" Flores stated he asked his appellate attorney "to correct this error."

A. *Applicable Law*

A defendant is ordinarily required to file a timely notice of appeal within 60 days of the challenged order. (Cal. Rules of Court, rule 8.406(a)(1); *In re A.R.* (2021) 11 Cal.5th 243, 246.) This is a jurisdictional deadline. Normally, courts lack the power to extend it. (*Estate of Hanley* (1943) 23 Cal.2d 120, 122; see Cal. Rules of Court, rules 8.60(d), 8.104(b).) " 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.)

The principle of constructive filing of a late notice of appeal should be applied when a criminal defendant requests trial counsel to file a notice of appeal on his behalf and counsel fails to do so in accordance with the law. (*In re Benoit* (1973) 10 Cal.3d 72, 87-88.) But "we will not indiscriminately permit a defendant whose counsel has undertaken to file the notice of appeal, to invoke the doctrine of constructive filing when the defendant has displayed no diligence in seeing that his attorney has discharged this responsibility." (*Id.* at p. 89.)

Relief is also made available when trial counsel provides a criminal defendant ineffective assistance of counsel, entitling him or her to the constructive filing of a timely notice of appeal. (*Roe v. Flores-Ortega* (2000) 528 U.S. 470.) In *Roe*, the United States Supreme Court concluded that when trial counsel has been ineffective in failing to properly consult with his or her client about the appeal process, and that "constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have

16

taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." (*Id.* at p. 484.)

B. *Analysis*

As stated, the parties stipulated to the S.D. restitution order on June 26, 2023. "A stipulation is an agreement between counsel respecting business before the court." (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 142.) Stipulations are binding on the parties. (*Cooper v. Gordon* (1899) 125 Cal. 296, 302.) The court's oral pronouncement on that day constituted the restitution judgment as to S.D.; therefore, Flores was required to appeal within 60 days of that date. "Rendition of judgment is an oral pronouncement." (*People v. Mesa* (1975) 14 Cal.3d 466, 471, superseded on other grounds as stated in *People v. Turner* (1998) 67 Cal.App.4th 1258, 1268.)

We find unavailing Flores's argument that the October, 19, 2023 judgment, which contained a 20-cent discrepancy between the amount stated therein and the amount stated at the restitution hearing, amounted to a modification that in effect reset the appeal date. (Accord, *People v. Zackery* (2007) 147 Cal.App.4th 380, 389 ["[T]he abstract of judgment cannot add to, or modify the judgment, but only purports to digest and summarize it"].) Furthermore, "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*Zackery,* [check spelling] at p.385; *People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Mesa, supra,* 14 Cal.3d at p. 471 ["a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error"].) In any event, Flores's notice of appeal failed to specify it was taken from the October order.

17

Flores claims we should deem an appeal constructively filed from the October judgment. However, he has failed to demonstrate the diligence required to satisfy the requirement of case law. (*People v. Castillo* (1969) 71 Cal.2d 692; *In re Benoit, supra,* 10 Cal.3d at pp. 88-89 ["It is eminently clear that petitioner Benoit was fully diligent in his repeated efforts within the 60-day period to make sure his appeal was filed. He was thwarted by circumstances beyond his control, and is entitled to a declaration that his appeal is pending by virtue of the doctrine of constructive filing"].) In fact, it is significant that by the time of the October 2023 order, Flores was already obligated to start paying monthly installments on the S.D. restitution order as of August 1, 2023. Therefore he had every motivation to diligently monitor his appeal from that restitution order.

Flores's declaration contains no facts regarding his communications with defense counsel specifying when or how he learned of the restitution orders. He merely states that when he learned from appellate counsel that the "October 19" order was "not included in the notice of appeal," he asked appellate counsel to "correct this error." Even if we deemed the October 2023 order as the operative one, Flores's motion, filed approximately eight months afterwards, fails to show diligence. Flores also provides no declaration from his trial counsel relating to any of these alleged facts. The record is devoid of a basis for deeming a notice of appeal constructively filed, particularly in light of the parties' stipulation to S.D.'s restitution order, and his probation agreement that permitted him to reduce his felony conviction to a misdemeanor by paying off his restitution within one year.

Flores also has not met his burden of showing ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish constitutionally inadequate representation, the defendant must show that (1)

18

counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. (*Ibid*.) We defer to trial counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) On direct appeal, defense counsel's "competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice." (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.)

The record sheds no light on why Flores's counsel failed to appeal the S.D. restitution order. But a satisfactory explanation exists. Flores had stipulated to that restitution order, which we must assume incorporated his intent and his agreement to expeditiously resolve the S.D. matter, in order to reduce his felony conviction to a misdemeanor as his plea agreement provided. Accordingly, he lacked a basis for an appeal. "We interpret a stipulation, including a stipulation entered as a court order, in accordance with the ordinary rules of contract interpretation. [Citations.] [¶] 'We interpret a contract so as to give effect to the mutual intention of the contracting parties at the time the contract was formed.' " (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694.)

In light of the above, we deny Flores's motion to deem constructively filed an appeal as to the S.D. restitution order.

19

DISPOSITION

The judgment is modified by reducing H.O.'s restitution award to $3,667.98. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and to forward a certified copy to the Department of Corrections and Rehabilitation. We deny Octavio Flores's request to deem constructively filed an appeal as to the S.D. restitution order.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.

20